**IN THE COURT OF APPEALS OF IOWA**

No. 19-0332
Filed May 15, 2019

**IN THE INTEREST OF B.S. and T.S.,**
**Minor Children,**

**S.S., Mother,**
　　Appellant.

_____

Appeal from the Iowa District Court for Mahaska County, Rose Ann Mefford,

District Associate Judge.

A mother appeals the termination of her parental rights to two children.

**AFFIRMED.**

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Anna T. Stoeffler, Assistant

Attorney General, for appellee State.

Diane Crookham-Johnson of Crookham-Johnson Law Office PLLC,

Oskaloosa, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

The mother, Sarah, appeals the termination of her parental rights to eight-year-old B.S. and ten-year-old T.S. The juvenile court terminated her rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2018). Sarah maintains the State failed to prove the grounds for termination by clear and convincing evidence and termination is not in the children's best interests.[1]

We review termination proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "Our primary concern . . . has always been the best interests of the child[ren]." *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). We begin by considering the statutory grounds. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We consider the grounds of section 232.116(1)(f), which allows the court to terminate parental rights if all of the following factors are met:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Sarah challenges the fourth factor—whether B.S. and T.S. could be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4);

---

[1] The juvenile court also terminated the parental rights of B.S.'s father. He had little involvement in this case and does not participate in this appeal.

*In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

On our review, we agree with the juvenile court.

The children came to the attention of the Iowa Department of Human Services (DHS) in April 2016 when B.S. reported she was sexually abused in their home by Sarah's older son, A.H. The DHS entered into a safety plan that Sarah would not leave the children alone with A.H. without appropriate adult supervision. Despite this, in November, Sarah left the children with her paramour, Nick, without informing him of the safety concerns, and A.H. sexually abused B.S. again.[2] This resulted in a confirmed child-abuse report. When being interviewed by child protective services, T.S. disclosed that A.H. had sexually abused him too. Again, the DHS entered into a safety plan with Sarah: she could retain custody of the children if they all lived with Nick's brother and his wife, Tyler and Cheyenne.

In January 2017, Sarah slapped B.S. on the face, leaving a mark, which resulted in another confirmed child-abuse report. In March 2017, Nick struck B.S. in the face while Sarah was not at home, breaking her glasses and giving her a two to three inch cut above her left eye; this incident also resulted in a founded child-abuse report. In addition, Cheyenne reported Sarah was not around much and Cheyenne largely had been caring for the children on her own.

The juvenile court removed the children from Sarah's care and adjudicated them as children in need of assistance, pursuant to Iowa Code section 232.2(6)(c)(2) and (d) (2016).[3] The court ordered Sarah to obtain a substance-

---

[2] Sarah said she did tell Nick, but the juvenile court did not credit her statements.
[3] By order entered on November 29, 2016, pursuant to Iowa Code section 232.96.

abuse evaluation and treatment, attend individual counselling to address the sexual abuse of her children, and comply with random drug and alcohol testing.

Meanwhile, foster parents and service providers reported B.S. exhibited inappropriate sexualized behaviors and lacked boundaries with other people. T.S. also exhibited excessively aggressive behaviors. The children were moved through several foster homes, sometimes being moved due to the severity of their own behaviors. They were engaged in therapy to process and overcome the trauma they experienced while in their mother's care.

Sarah made several attempts at evaluation and treatment throughout the pendency of the case but had not yet completed a course of either substance-abuse or mental-health treatment or fully followed through with the recommendations of an evaluator. In January 2018, the court gave Sarah additional time to work toward reunification with the children and, in latter 2018, she appeared to be making more progress. In September, the DHS approved overnight visitation with the children. But the children soon reported that one night, Sarah had B.S. sleep in the same bed with her and her new paramour, Chuck, whom the children had never met before and after Chuck had spent a majority of the day drinking beer. B.S. reported Chuck "snuggled" her.

When confronted, Sarah was untruthful about the fact Chuck was living with her in violation of court orders. She agreed that allowing a strange man to sleep in the same bed with and "snuggle" her sexually-traumatized daughter was also traumatizing. But Sarah maintained that she had made good parenting decisions overall and minimized the incident because she "supervised them . . . the whole time." The juvenile court specifically found Sarah lacked credibility with regard to

her inconsistent statements and her professed understanding of why this incident was concerning:

> [Sarah] was clearly giving the response that she believed was expected of her. [Sarah's] actual perception remains that the children were in no danger because [she] was present. [Sarah] has made almost no progress in being able to appreciate the gravity that past abuse events have on her children, nor has she been able to demonstrate that she has the protective capabilities to prevent them from the risks of future abuse.

B.S.'s therapist also provided a letter to the court stating,

> Based on my knowledge of the inconsistency in parental follow through and the continued damage this is causing [B.S.], it is . . . my opinion that [B.S.] should not be placed back in her mother's care. It is . . . my opinion that [B.S.'s] mother is not able to provide a safe and stable environment [in] which [B.S.] could thrive.

On appeal, Sarah contends the State did not show the children could not be returned to her care at the present time because the court relied on two "indiscretions": the "snuggling" incident and the fact she had let the children watch an R-rated movie. This characterization seriously minimizes the real concerns in this case: Sarah's failure to recognize the effect of sexual trauma on the children and her inability or unwillingness to exercise her parental responsibilities to protect the children from further harm—equally from herself, from A.H., and from her paramours. Even when not directly inflicted by herself, Sarah's parenting decisions exposed the children to significant physical and psychological abuse. We, like the juvenile court, have little reason to think the children could be returned to her care and not be exposed in short order to the kinds of adjudicatory harms they have already suffered. Clear and convincing evidence shows the children could not be returned to her care at the present time.

Turning to her best-interests claim, we look to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2) (2018). The children have been under DHS supervision for almost three years and out of Sarah's care for over one year. When they were in her care, they were repeatedly exposed to sexual and physical abuse. During this case, they have been moved through several foster homes. The DHS worker testified they are extremely traumatized but adoptable. Sarah had an extension to show she could begin taking their trauma and her contributions to it seriously, and she failed to do so. We agree with the State and the juvenile court that the time for patience with Sarah has ended. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). The children's best interests dictate terminating Sarah's rights.

**AFFIRMED.**