# IN THE COURT OF APPEALS OF IOWA

No. 19-1575
Filed November 27, 2019

**IN THE INTEREST OF A.H.,**
**Minor Child,**

**A.C., Mother,**
    Appellant,

**L.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to a child. **AFFIRMED ON BOTH APPEALS.**

Kelsey Knight of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Brent M. Pattison of Drake Legal Clinic, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to a child, born in 2018.

## I.    *Mother*

The mother contends the State failed to prove the grounds for termination cited by the district court, termination was not in the child's best interests, and she should have been afforded additional time to work toward reunification with the child.

The district court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2019). We may affirm if we find clear and convincing evidence to support either of the grounds. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on section 232.116(1)(f), which requires proof of several elements, including proof the child cannot be returned to the parent's custody.

Approximately two-and-one-half months after the child's birth, the mother left the child with a friend and checked herself into a hospital for anxiety-related disorders. She subsequently transitioned to a domestic violence shelter but left the shelter without informing staff of her whereabouts. The State applied to have the child formally removed from the mother's custody. The district court granted the application and later adjudicated the child in need of assistance.

The child remained with the mother's friend. Meanwhile, the mother was arrested and briefly jailed for fifth-degree theft. At the time of the termination hearing, she was again in jail on a charge of second-degree theft. She agreed the child could not be returned to her custody because she was "locked up." The

mother's concession establishes the challenged element of Iowa Code section 232.116(1)(f).

Termination also was in the child's best interests. *See* Iowa Code § 232.116(2). The child remained out of the mother's care for well over one year. Although the mother underwent therapy and believed the sessions were beneficial, the court found otherwise, stating she did not participate "in requisite services at a requisite level to address her mental health at a sufficient level to help her rise to the level of minimal adequacy to be a full time custodial parent for a 17-month-old child." The record supports the court's finding. But separate from the mother's mental-health treatment or lack thereof, she was in no position to care for the child until the criminal matters were resolved.

In light of that reality, the mother argues the court should have afforded her additional time to work toward reunification with her child. Although the department caseworker testified the child would not suffer additional harm if the termination decision were deferred, she also stated the child should not have to wait an additional six months. We agree. The mother had a long history with the department predating this proceeding. The child lived with the mother's friend for most of his young life, and the record contains scant evidence to suggest the mother would be in a position to assume the child's care in the imminent future. Accordingly, we affirm the termination of the mother's parental rights to the child.

## II.    *Father*

The father contends the department failed to make reasonable efforts to reunify him with his child and the district court should have afforded him additional time to work toward reunification.[1]

The State is required to "make every reasonable effort" to return the child to the child's home. Iowa Code § 232.102(9). "[T]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (citation omitted). This requirement is embedded in the grounds for termination cited by the district court. *Id.* "Therefore, in this case, the State was required to show reasonable efforts as a part of its ultimate proof." *Id.* at 528.

The father was incarcerated for one year preceding the termination hearing. He had no contact with the child during that period. Although he testified the

---

[1] The father does not challenge the State's failure to serve him with notice of the underlying child-in-need-of-assistance petition. *See In re M.L.M.*, 464 N.W.2d 688, 690 (Iowa Ct. App. 1990) ("Notification of the pendency of a child in need of assistance proceeding shall be served upon known parents." (citing Iowa Code §§ 232.37(2), .88)); *see also In re S.P.*, 672 N.W.2d 842, 848 (Iowa 2003) (holding State failed to serve father with petition for termination of parental rights and failed to conduct a reasonably diligent search for the father, preventing him from being heard and rendering the judgment of termination void). The father further concedes "[t]he mother was uncooperative in identifying [him] for several months." He essentially accepts the district court's finding that notice under sections 232.37 and 232.88 was given or "reasonably diligent efforts" were made "to do so." In particular, the court's dispositional order stated "until Mother makes herself known to [the department] and her lawyer and can fill out a paternity affidavit or provide further detail or information, the State does not have enough information to even attempt to personally serve a putative father at this point in time." The court further found that when the department made contact with the father and offered him a paternity test, the father refused the test. The court acknowledged there was conflicting evidence on the issue but credited the State over the father. In light of the district court's findings on the notice issue, including its adverse credibility finding as to the father, we decline to deem the underlying child-in-need-of-assistance proceeding void as to the father for failure to serve him with the child-in-need-of-assistance petition. *See S.P.*, 672 N.W.2d at 846 ("A void judgment is subject to attack at any time.").

department did not provide him with any reunification services, he acknowledged receiving rehabilitation services from the department of corrections. *See id.* at 529 ("[T]he statute provides for situations in which reunification need not be a goal or component of [the department's] reasonable efforts."). In addition, he did not ask the department of human services for specified services in the five months after he was served with the termination petition.

We recognize the department failed to reach out to the father after administering the paternity test. But the caseworker testified to her belief that notices of the proceeding were sent to his relatives and they were encouraged to request home studies in an effort to secure custody of the child. Because the father was not slated to discharge his sentence until 2027 and he expected to remain in prison until at least 2020, we conclude the department minimally satisfied its reasonable-efforts mandate.

Like the mother, the father requested additional time to facilitate reunification. We are not persuaded additional time was warranted. As noted, the father had no contact with the child for one year. While he testified to caring for the child in the months after his birth, the mother disputed that testimony. We do not question the father's expressions of love for the child, but we agree with the district court that immediate termination was warranted.

**AFFIRMED ON BOTH APPEALS.**