# IN THE SUPREME COURT OF IOWA

No. 18–1375

Filed March 1, 2019

**IN THE INTEREST OF L.T., A.T., AND D.T.,**
Minor Children,

**K.T.,** Mother,

      Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

K.T. seeks further review of an order terminating parental rights. **DECISION OF COURT OF APPEALS VACATED; JUVENILE COURT ORDER REVERSED AND REMANDED.**

Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, John McCormally, (until withdrawal) and Anagha Dixit, Assistant Attorneys General, Jerry Vander Sanden, County Attorney, and Kelly Kaufman, Assistant County Attorney, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.

**APPEL, Justice.**

In this case, we consider a mother's appeal from the juvenile court's final order terminating her parental rights to L.T., A.T., and D.T. entered twenty months after the evidentiary hearing on the issue. Approximately six months after the evidentiary hearing, the juvenile court granted the State's motion to reopen the record and present additional evidence in support of its petition to terminate parental rights. After receipt of the new evidence, the juvenile court orally stated its intent to terminate parental rights but did not enter a written ruling at that time.

Shortly after the juvenile court's oral announcement, reasonable efforts toward reunification ceased. A few months later, the mother requested, at a hearing and by motion, reasonable efforts toward reunification pending the juvenile court's final order.

When more than nineteen months passed from the original hearing without the juvenile court entering a written ruling, the mother moved to reopen the evidence. The mother sought to show that she was sober, was involved in an outpatient program to maintain sobriety, and had obtained stable housing and employment.

Almost a month after the mother's motion to reopen the evidence, the juvenile court entered a written order terminating the mother's parental rights. On the same day, the court entered another order denying the mother's motions.

The mother appeals. She challenges the termination order as unlawful. She asserts that the juvenile court abused its discretion by declining to allow her the opportunity to present additional evidence after the passage of nineteen months from the initial termination hearing. The mother also asserts that she was entitled to reasonable efforts toward

reunification with her children until the entry of a final written order of termination.

We transferred the case to the court of appeals. The court of appeals expressed displeasure over the delay in the filing of a timely order but nonetheless affirmed the ruling of the juvenile court. We granted further review. We now vacate the decision of the court of appeals, reverse the order of the juvenile court, and remand the case to the juvenile court for further proceedings.

## I. Background Facts and Proceedings.

There are three children that are the subject of this case—L.T., A.T., and D.T. D.T., the youngest child, was born in May 2015.

At birth, D.T. tested positive for amphetamines. The mother was found responsible for child abuse arising from this incident.

In June 2015, the Iowa Department of Human Services (DHS) received results of a hair test from the mother. She tested positive for amphetamines. At a hearing on June 23, the mother stipulated that the children were children in need of assistance. Based on the stipulation, the court adjudicated the three children as children in need of assistance. During a dispositional hearing the next month, the parties stipulated that the children should remain in their parents' custody with DHS supervision. The court ordered a permanency plan be submitted that would state that the permanency goal is to maintain the children in their parents' custody.

Use of methamphetamines by the parents in August and September of that year led to the children's emergency removal from the home. The juvenile court placed custody of the children with DHS for purposes of

placement in foster care.[1]  The court also ordered a permanency plan stating that the permanency goal is reunification with the father.

In January and May of 2016, the juvenile court entered periodic mandatory review orders.  In these orders the court stated that "the permanency goal at this time is family reunification."  The order also found that DHS had made reasonable efforts to achieve permanency and recited a litany of services that had been provided, including, but not limited to, parental instruction and counseling; substance abuse help; mental health treatment; medication management; housing referrals; and family safety, risk, and permanency services.  In the May order, the court noted that it was informed the State would file a petition to terminate parental rights and directed the State to do the same.

In June, the State petitioned for termination of the parents' parental rights.  The petition relied on four different statutory grounds for termination[2] and an affidavit from a DHS social worker.

A couple months later, in September, the court entered another permanency review order.  This order stated that "the permanency goal at this time is reunification with a concurrent goal of termination of parental rights and adoption."  The court again found that DHS was making reasonable efforts to achieve permanency and noted that a hearing was scheduled on the State's petition to terminate parental rights.

The juvenile court held a hearing on the State's petition to terminate parental rights in November.  At the termination hearing, the mother admitted that she used methamphetamine the week before trial and

---

[1]The children have remained with the same foster parents since their removal in September 2015, a period of about three-and-a-half years.

[2]The State cited Iowa Code section 232.116(1)(*a*), (*g*), (*h*), (*l*) (2016).  All statutory citations herein are to the 2016 Code unless otherwise stated.

acknowledged that she "absolutely" needed residential treatment. The mother testified she recognized the need "to be away" in a "structured environment" to maintain her sobriety, something that she could not do by herself.

In January 2017, the juvenile court held a permanency review hearing. At the hearing, the juvenile court learned the mother had been in a residential treatment program, had left the program, but hoped to get back into a residential program. Afterward, the court entered a permanency review order instructing that prior orders should continue and noting that its ruling on the petition to terminate parental rights remained pending. In addition, the court again found DHS was making reasonable efforts to achieve permanency and recited a list of services provided to the parents and children.

In a permanency review order signed on May 18, 2017, the juvenile court noted that the parents still struggled with drug abuse and that they did not have stable housing but were living with a relative. The juvenile court noted that a further hearing on the petition for termination of parental rights was scheduled for the following week. The court again directed that prior orders should continue and, noting the list of services provided to the parents and children, found that DHS had made reasonable efforts to achieve permanency.

On May 23, the juvenile court reopened the record of the termination hearing at the State's request. The State offered the most recent progress reports and the guardian ad litem's report. The mother also testified, asserting that she had been approved for subsidized housing, was unemployed but started work cleaning apartments, and was participating in mental health treatments. The mother admitted, however, that she

relapsed in February and April and did not appear for a drug screen in May.

At the close of the May 23 hearing, the juvenile court declared the termination matter resubmitted. The juvenile court told the parties, "I regret that my schedule doesn't really allow me any time during the course of a workday to write rulings." The juvenile court stated, however, "I want to relay to you that I'm going to grant the State's petition for termination of parental rights." The juvenile court recognized the parental love for the children, but declared,

> The problem is, neither you [n]or [the father] have really been able to gain control of your addiction issues, and your substance abuse issues, and, that, combined with mental health issues is the primary reason that your children cannot be safely returned to your care. . . . The children have waited long enough that it's in their best interest to have permanency. So I will grant the State's petition and order that they be made available for adoption. . . . [T]heir needs have to be considered separately from yours and [the father's], and their needs require permanency, safety and stability, and I can't say that that is going to happen by return of custody to you or to their father now or anytime in the recently near future without them continuing to be at risk of harm and requiring adjudication.

Still, time passed without the entry of a written order. In a permanency review order dated September 21, 2017, the juvenile court stated, "The Court has provided verbal order granting the State's Petition for Termination of Parental Rights and placing custody and guardianship with the Department of Human Services. Written order remains pending." The court again directed that prior orders continue and noted that DHS had made reasonable efforts to achieve permanency. This time, the court recited only foster family care and supervision and DHS services.

Shortly before and after the September order, the mother requested services from DHS. On September 17, at a permanency hearing, the

mother asked that "reasonable efforts continue until there is a termination order." The juvenile court did not directly respond but stated it would do its best to get out a written order. On October 2, the mother again requested reasonable efforts by motion. She asserted that "[t]he State is required to provide reasonable efforts toward reunification until termination is final" and noted that no services had been provided since a final visit with the children in May 2017. She requested visits and phone calls with the children, a family team meeting, drug testing, and assistance in furnishing her new housing.

Another nine months later, on July 1, 2018, the mother asked that the record be reopened to allow her to present additional evidence. The mother sought an opportunity to show that she was sober through drug testing and that she has been involved in substance abuse treatment to maintain her sobriety. She also sought to introduce evidence regarding stable employment and stable housing.

On July 27, the juvenile court entered its ruling on the termination petition. This order came approximately twenty months after the November 2016 termination hearing and twenty-five months after the State petitioned for termination of parental rights. In its termination order, the juvenile court narrated about the long history of the mother's substance abuse and lack of stability. The court noted that the mother had been involved with multiple inpatient and outpatient substance abuse treatment programs but continued to use drugs and alcohol. The court stated that the mother's substance abuse issues impaired her "ability to maintain employment [and] housing, her physical and emotional health, her ability to maintain a healthy relationship with her husband, and certainly her ability to provide a safe, stable home for her children."

The juvenile court concluded that, given those facts, the children could not be safely returned to their mother's care now or in the near future. The court noted that the children had been in foster family care for a majority of their lives and that adoptive placement would provide the level of permanency that is in the best interest of the very young children. As such, the juvenile court ordered that the mother's parental rights to L.T., A.T., and D.T. were terminated. On the same day, upon entry of the termination order, the juvenile court denied the mother's motions to reopen the record and for additional reasonable efforts.

**II. Standard of Review.**

Our review in proceedings to terminate parental rights is generally de novo. *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018). We review the denial of motions to reopen the record for an abuse of discretion. *See In re J.R.H.,* 358 N.W.2d 311, 318 (Iowa 1984). In order to show an abuse of discretion, a party must show the juvenile court's action was unreasonable under the attendant circumstances. *In re J.L.L.,* 414 N.W.2d 133, 135 (Iowa 1987).

**III. Discussion.**

**A. Introduction.** The three issues in this case—whether the juvenile court erred in terminating parental rights on July 27, 2018, whether the juvenile court erred in failing to reopen the record at the mother's request on July 1, 2018, and whether the mother was deprived of reasonable efforts services—are interrelated. The mother does not dispute that the juvenile court's order entered on July 27, 2018, fairly reflected the situation as of November 2016. The mother essentially argues that the inordinate delay of twenty months between the November 2016 hearing and the July 2018 written order makes the order stale and, in light of the mother's desire to introduce new and timely evidence,

potentially unreliable. The mother further argues that reversal of the July 2018 termination order is required because the State failed to provide reunification services after the juvenile court's oral indication of an intention to terminate parental rights.

**B. Failure to Reopen Record.** When a juvenile court diligently enters a termination order after a hearing, there is generally no basis to complain about a discretionary refusal of the juvenile court to reopen the record, particularly when the evidence was available to the parties at the time of the hearing. *Cf. In re J.J.S.*, 628 N.W.2d 25, 30–31 (Iowa Ct. App. 2001) (holding that the juvenile court erred in reopening case for new evidence subsequent to the dismissal of a petition for termination of parental rights). *See generally In re J.E.*, 723 N.W.2d 793, 801–02 (Iowa 2006) (Cady, J., concurring specially) (emphasizing the importance under federal and state law for prompt action in the best interests of the child); *In re T.R.*, 705 N.W.2d 6, 12 (Iowa 2005) ("[D]elays in termination of parental rights cases are 'antagonistic' to the child's best interest."). But here, there was an inordinate delay in entering the termination order. Further, the juvenile court permitted the State to reopen the record approximately six months after the original hearing and then denied a similar motion made by the mother more than one year later. The differential treatment of the parties on their motions to reopen the record makes little sense.

More importantly, when almost twenty months have passed from the original hearing, the mother's situation may well have materially changed. The mother asked to present evidence that directly went to the concerns of the juvenile court, namely, evidence regarding sobriety and a program to maintain sobriety and evidence regarding stable housing and employment. Given the long delay between the original hearing and the

mother's motion to reopen the record, the fact that no final order had been entered, the germaneness of the matters that the mother sought to introduce, and the juvenile court's willingness to grant a similar motion to the State, we conclude that the juvenile court abused its discretion by not allowing the mother to present additional evidence before it entered its ruling on termination. *See In re T.W.W.,* 449 N.W.2d 103, 104–05 (Iowa Ct. App. 1989) (ordering a limited remand of termination order based on trial court's erroneous refusal to reopen record to consider new evidence concerning mother's potential resolution of issues previously hampering ability to adequately parent her children). *Cf. In re J.R.H.,* 358 N.W.2d at 318 (holding that trial court did not abuse discretion in reopening evidence because "the best interests of the children dictate that the rules of procedure be liberally applied in order that all probative evidence might be admitted").

Because the juvenile court erred in failing to allow the mother to present additional contemporary evidence, we reverse the juvenile court's July 27, 2018 termination order and remand the case to the juvenile court with instructions to grant the mother's motion to reopen the record. Upon receipt of the evidence, the juvenile court shall expedite consideration of the matter and promptly issue an order on termination.

**C. Reasonable Efforts.** The mother asserts that after the juvenile court orally indicated in May of 2017 that it would terminate the mother's parental rights, DHS made no further efforts towards family reunification. She claims that reasonable efforts toward reunification should be provided until the juvenile court enters a written order of termination. The State responds that providing such services would be pointless in light of the juvenile court's clear indication that it would be terminating the mother's parental rights.

"[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination." *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) (en banc). Still, where the elements of termination require reasonable efforts by DHS, the scope of DHS's efforts after removal impacts the burden of proving those elements. *See id.* Thus, "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.M.,* 904 N.W.2d 835, 839 (Iowa 2017) (quoting *In re C.B.,* 611 N.W.2d at 493).

In this case, the district court found that the State established grounds for termination under three separate provisions—Iowa Code section 232.116(1)(*f*)–(*h*) (2016). All three provisions invoke a requirement of reasonable efforts by DHS. *See id.* § 232.116(1)(*f*), (*h*) (requiring the court to find that the child cannot be returned to the custody of the child's parents as provided in section 232.102); *id.* § 232.116(1)(*g*) (requiring the court to find "that the parent continues to lack the ability or willingness to respond to services which would correct the situation" and "that an additional period of rehabilitation would not correct the situation"); *see also In re L.M.,* 904 N.W.2d at 839–40 (explaining, upon review of termination proceeding under section 232.116(1)(*h*), that DHS must make reasonable efforts but the challenge to those efforts was untimely); *In re L.H.,* 480 N.W.2d 43, 46 (Iowa 1992) (explaining that a statutorily mandated finding that " 'an additional period of rehabilitation would not correct the situation' requires a prior effort to formulate and implement a rehabilitative permanency plan under Iowa Code section 232.102(6)" (quoting Iowa Code § 232.116(1)(*f*) (Supp. 1989))). Therefore, in this case, the State was required to show reasonable efforts as a part of its ultimate proof. *See In re L.M.,* 904 N.W.2d at 839; *In re C.B.,* 611 N.W.2d at 493.

Section 232.102(7) (2016) provides that DHS is to provide "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7). Further, under Iowa Code section 232.102(10)(*a*),

> "*reasonable efforts*" means the efforts made to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home. . . . If returning the child to the family's home is not appropriate or not possible, reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child. A child's health and safety shall be the paramount concern in making reasonable efforts.

*Id.* § 232.102(10)(*a*).

We think the reasonable efforts obligation runs until the juvenile court has entered a final written order of termination.[3] The juvenile court is authorized to terminate parental rights, *id.* § 232.117(3), but the same statutory section provides that "[a]fter the hearing is concluded the court shall make and file written findings," *id.* § 232.117(1). Moreover, the final termination order in a termination proceeding is what determines whether parental rights are terminated, and "[a] ruling is not final when the trial court intends to do something further to signify its final adjudication of the case. Furthermore, a juvenile court order is not final unless it disposes of all the issues." *In re T.R.*, 705 N.W.2d at 10–11 (quoting *In re C.S.*, 516 N.W.2d 851, 857 (Iowa 1994)); *see also* Iowa Code § 232.2(57) (" '*Termination of the parent-child relationship*' means the divestment by the court of the parent's and child's privileges, duties, and powers with respect to each other.").

---

[3]The juvenile court may, under certain circumstances not relevant in this case, waive the requirement for making reasonable efforts. Iowa Code § 232.102(12).

An oral expression of an intended ruling is not the final action of the court. *See DeKruyff v. Johnston*, 252 N.W.2d 389, 389–90 (Iowa 1977) (holding no jurisdiction to entertain an appeal of trial court's "informally stated" intent to dismiss case during trial). And since the State is required to show reasonable efforts as a part of its ultimate proof, *In re L.M.*, 904 N.W.2d at 839; *In re C.B.*, 611 N.W.2d at 493, we do not believe an oral indication of an expected ruling is sufficient to terminate DHS's obligation to provide reasonable efforts.

However, DHS's obligation to provide reasonable efforts until a final written termination order does not necessarily require DHS to provide reasonable efforts toward *reunification*. The legislature instructed that "the paramount concern[s] in making reasonable efforts" are "[a] child's health and safety." Iowa Code § 232.102(10)(*a*). Where it is inappropriate to return a child to the family home, the legislature specified that "reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child." *Id.* "If it has been determined that the child cannot return to the child's home," the child's "case permanency plan" must include "documentation of the steps taken to make and finalize an adoption or other permanent placement." *Id.* § 232.2(4)(*j*). Therefore, the statute provides for situations in which reunification need not be a goal or component of DHS's reasonable efforts.

Our caselaw has recognized that the interests of the child take precedence over family reunification. Our primary concern in termination proceedings has always been the best interests of the child. *See In re K.M.*, 653 N.W.2d 602, 608 (Iowa 2002); *In re S.O.*, 483 N.W.2d 602, 604 (Iowa 1992); *In re Morrison Children*, 259 Iowa 301, 311, 144 N.W.2d 97, 103 (1966). Still, before 1997, Iowa's child welfare laws focused on reuniting the family unit. *In re J.E.*, 723 N.W.2d at 801. In the late 1990s, however,

the focus in termination cases shifted from reunification of the family to the child's best interests. *In re K.M.*, 653 N.W.2d at 608. In determining best interests, "we look to the child's long-range as well as immediate interests," "consider[ ] what the future holds for the child if returned to the parents," and weigh "the child's safety and need for a permanent home." *In re J.E.*, 723 N.W.2d at 798 (majority opinion) (first and second quotations) (quoting *In re C.K.*, 588 N.W.2d 170, 172 (Iowa 1997)); *In re K.M.*, 653 N.W.2d at 608 (third quotation).

The shift in Iowa law tracked a change in federal law. *In re J.E.*, 723 N.W.2d at 801–02 (Cady, J., concurring specially); *In re C.B.*, 611 N.W.2d at 493 (explaining that our laws relating to the welfare of children have been driven by policies and laws generally developed at the national level). The family preservation concept, which guided national policy on reasonable efforts for two decades, "was found to be detrimental to children in some cases." *In re C.B.*, 611 N.W.2d at 493. Consequently, in 1997, Congress "broaden[ed] the focus of reunification to place greater emphasis on the health and safety of the child." *Id.* The 1997 federal legislation shifted the focus from family reunification to time-limited family reunification services. *In re C.M.*, 652 N.W.2d 204, 208 (Iowa 2002).

> In bygone days, the best interests of a child was a broad concept that embraced a multitude of considerations, and prominently focused on the need to keep families together and to avoid the termination of parental rights if at all possible. No more. . . . We must apply this new rationale with earnest in each case . . . pursuant to the policies established by our legislature.

*In re J.E.*, 723 N.W.2d at 802 (Cady, J., concurring specially).

Of course, reasonable efforts can, and often do, include efforts toward reunifying a family, but the child's health and safety are paramount and conditions precedent to these efforts. Reasonable efforts

are services to "preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home." Iowa Code § 232.102(10)(*a*). "Reasonable efforts *may* include but are not limited to family-centered services, if the child's safety in the home can be maintained during the time the services are provided." *Id.* (emphasis added). The reasonable efforts concept covers efforts to prevent and eliminate the need for removal and to deliver reunification services while providing adequate protection for the child. *See In re C.B.*, 611 N.W.2d at 493. Our recognition that certain situations do not call for efforts towards reunification does not mean that, in any case, DHS can fail to deliver reasonable efforts toward reunification where statutorily required or otherwise in the child's best interests.[4] Rather, it is an acknowledgment that efforts toward reunification are not always a component of DHS's reasonable efforts obligation.

In this case, then, whether reunification services were required during the twenty-month period between the termination hearing and the court's termination ruling depends on the best interests of the children. In its oral statement during the May 2017 hearing, the juvenile court indicated its view that the children's best interests would be served through adoption and termination of the mother's parental rights. Yet in

---

[4]Our statute thus complies with the requirements for federal funding mandating that "the child's health and safety shall be the paramount concern" in determining and making reasonable efforts and that

> reasonable efforts shall be made to preserve and reunify families . . . prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home[,] . . . and to make it possible for a child to safely return to the child's home.

42 U.S.C. § 671(a)(15)(A)–(B) (2012). *See generally In re L.H.*, 480 N.W.2d at 46 n.2 (recognizing that Iowa's statutory provisions on reasonable efforts are necessary for compliance with federal funding requirements).

its periodic review order of September 2016, the court stated that "the permanency goal at this time is reunification with a concurrent goal of termination of parental rights and adoption," and the court appears to have continued that order through at least September 2017. The court's inordinate delay in entering the written order was thus compounded by inconsistent declarations on the type of services that would best serve the child.[5]

We have reversed the termination order in light of the court's erroneous refusal to reopen the record. Thus, it would be premature for us to determine on the present record whether reasonable efforts toward reunification during the twenty-month hiatus would have served the best interests of the children and whether the lack of such services should have an impact on termination. We reiterate for emphasis that DHS's reasonable efforts obligation continues until either a final written termination order or a waiver by the juvenile court, Iowa Code §§ 232.102(12), .117(1); *In re T.R.,* 705 N.W.2d at 10–11, but the nature of that obligation depends on the best interests of the children, Iowa Code § 232.102(10)(*a*); *In re K.M.,* 653 N.W.2d at 608; *In re C.B.,* 611 N.W.2d at 493. After receipt of the additional evidence on remand, the juvenile court shall consider DHS's efforts, or lack of efforts, in the period following the district court's termination hearing in determining whether the State has shown reasonable efforts as a part of its ultimate proof. *See In re L.M.,* 904 N.W.2d at 839; *In re C.B.,* 611 N.W.2d at 493–94.

---

[5]We recognize that reunification, adoption, and termination may be concurrent goals for DHS's reasonable efforts, and that those goals are not inconsistent because they "reflect divergent possible outcomes for a child in an out-of-home placement." Iowa Code § 232.2(4)(*h*). The problem here is that the court's oral declaration at the May hearing seems to have renounced the reunification goal even as its periodic written orders maintained that goal.

**IV. Conclusion.**

We reverse the termination order of the juvenile court and remand the matter for further proceedings.  Upon remand, the juvenile court shall expeditiously reopen the record to permit the mother to supplement it. The juvenile court shall then expeditiously consider the merits of the petition for termination on the record previously made as supplemented by the parties.

**DECISION OF COURT OF APPEALS VACATED; JUVENILE COURT ORDER REVERSED AND REMANDED.**