# IN THE COURT OF APPEALS OF IOWA

No. 19-1946
Filed March 4, 2020

**IN THE INTEREST OF K.W., K.W., A.M., and D.M.,**
**Minor Children,**

**S.D., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to four children. **AFFIRMED.**

Kaitlin T. Boettcher of Moore, Heffernan, Moeller & Meis, L.L.P., Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Maxine Buckmeier of Maxine M. Buckmeier, P.C., Sioux City, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to four children, born in 2014, 2015, 2016, and 2018.[1]  She contends (1) the State failed to prove the grounds for termination cited by the juvenile court; (2) the juvenile court should have granted her additional time to work towards reunification; and (3) termination was not in the children's best interests.  We affirm.

## I.      *Background Facts and Proceedings*

This family most recently came to the attention of the department of human services in September 2018,[2] when three-month-old K.W. was admitted to the emergency room with a traumatic brain injury, including several acute subdural hemorrhages.  K.W. was also malnourished.  When questioned about K.W.'s injury, the mother responded she was unsure what happened but pointed out that the child's father, F.M.,[3] reported to hospital staff that K.W. fell off the couch two weeks prior.  The father also stated he had thrown K.W. in the air to play with him. Physicians determined the child had old and new brain injuries, from at least two incidents, and that he could not have received the injuries from falling from a couch or being played with.  Physicians opined K.W.'s injury was the result of someone shaking him in a "whiplash" type motion or throwing him with excessive force.

---

[1] The parental rights of children's fathers were also terminated.  They do not appeal.

[2] The department first became involved with the family in 2014, due to alleged drug use by the mother, which was not confirmed.  In 2015, the department implemented services for the family after A.M. tested positive for marijuana at birth. In 2017, the department again implemented services for the family upon reports of domestic violence in the home between the parents.

[3] F.M. is the father of the two younger children, and he lives with the family.

When the mother learned there was going to be a search of the family home, she started screaming and left the hospital. During the search, officers found marijuana and paraphernalia. K.W. tested positive for marijuana and methamphetamine. The older K.W. tested positive for marijuana. The children were removed from the home and adjudicated in need of assistance.

The oldest child, D.M., was interviewed about K.W.'s injury. D.M. expressed fear of the father and reported that he hurt the mother and the children. With regard to K.W., D.M. said the father "bust his head right open." D.M. showed the therapist what happened to K.W. by picking up a doll and throwing it on the floor, stating, "Like throw him." When asked who threw K.W., D.M. consistently responded the father. D.M. stated the mother saw what happened and did not do anything.

The children's maternal grandmother cared for the children occasionally. Prior to K.W.'s admission to the hospital, the grandmother expressed concern to the mother about K.W.'s head and difficulty breathing. The mother said she had taken K.W. to the hospital and he was fine. The mother continued to deny involvement in K.W.'s injury and alleged the grandmother caused the injury to K.W. The mother also stated D.M. was lying about K.W.'s injury. The mother admitted the father had dropped K.W. a couple times. The father acknowledged he had to clean blood off the floor because the children fell. Unexplained marks were found on the older children.

The department implemented rehabilitative services, including supervised visitation, individual and family therapy, substance-abuse evaluation and treatment, and a psychological evaluation. The mother's psychologist noted

concerns about the mother's lack of insight and opined the children were at high risk for future abuse and neglect if returned to her care. The mother and father resumed their relationship in March 2019, despite warnings that their relationship would affect reunification with the children.

The State filed a petition to terminate the mother's parental rights in August 2019. The termination hearing was held over two days in September and November 2019. The record before the juvenile court indicated the children had been removed from the mother's home for over one year, her visits with the children remained supervised, and she had not made progress to address concerns about abuse and violence in the home. The mother continued to minimize the father's violence, and she stated she did not believe he would hurt the children. She requested the children be returned to her care or that she be given an additional six months to work toward reunification. The department and guardian ad litem recommended termination of the mother's parental rights.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(d), (h), (f), and (i) (2019). The mother appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.    Discussion

The mother challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. We may affirm if we find clear and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on Iowa Code section 232.116(1)(h) and (f), which requires proof of several elements including proof the children could not be returned to the mother's custody.

At the time of the termination hearing, the mother had met some of the case plan requirements. She completed substance-abuse treatment and had submitted negative drug tests. But concerns regarding the mother's mental-health needs and protective capacity remained addressed. The mother continued to deny knowing anything about how K.W. was injured, and she maintained that D.M. was lying about the father's abuse. But she acknowledged the father had "dropped" the child and that he had been violent toward her in the past. In September 2019, the mother stated she did not believe the father would hurt the children. Despite the mother's awareness that her protective capabilities were one of the main hurdles toward reunification with her children, she made no progress to gain insight or accept responsibility for her decisions. The juvenile court stated:

> While [the mother] has "checked the boxes," her actions and statements continue to put into question her ability to keep her children safe from neglect and abuse. She continues to display anger and frustration during visits, especially toward [D.M.]. She remains in a relationship with the man who has harmed her and her children and continues to defend him, if not herself as she failed to seek immediate medical attention for [K.W.] and continues to defend [F.M.].
>     . . . .
>     Participating in services is not enough. There appears to be a lack of bonding between [the mother] and the children. She has a

lack of insight, poor judgment, poor knowledge of what Is developmentally age-appropriate care, and has engaged in activities that are harmful and illegal. Her marijuana usage is the least of the issues that exist. She has clearly not addressed her anger. She has clearly chosen to protect [F.M.] and herself rather than her children. These children would not be safe if returned to the custody of their mother now or at any time in the foreseeable future pursuant to Iowa Code section 232.102. It is clear to this court that her children are not her priority.

We concur in the court's finding that the children could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(h) and (f) was satisfied.

The mother also claims she should be granted a six-month extension to work toward reunification. Although the juvenile court observed the mother clearly loved the children, the court observed that visitation continued to be fully supervised and no meaningful progress toward reunification had been made:

> Despite services offered/provided, each of these parents has been unable or unwilling to stabilize their lifestyles. The circumstances leading to the adjudication of these children continue to exist. The risk of harm to these children continues to exist due to [the mother] and [F.M.]'s continued failure to acknowledge their part in what happened to [K.W.]; their neglect of the children's emotional, physical or financial needs; leaving the children to be cared for by known drug users; and exposing the children to verbal/emotional abuse, domestic violence and possibly sexual activity/abuse. There is clear and convincing evidence that the abuse/neglect posed a significant risk to the lives of these children or constituted imminent danger to the children. [K.W.] was at risk of death had he not received immediate medical attention. All of the children were malnourished and underweight. [F.M.] has gone through the motions of participating in services, but there is no indication he has internalized those services. . . . There is no evidence that would indicate these children would not suffer from the same fate if returned to the custody of their mother and [F.M.]

Under these facts and circumstances, we do not find the court erred in denying the mother's request for an extension.

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2). The mother argues that the children have a "strong connection and bond" to her and considering their "immediate and future needs," termination is not in their best interests. *See id.* § 232.116(3)(c). The exceptions to termination of parental rights found under section 232.116(3) are permissive, not mandatory. *In re A.S.*, 906 N.W.2d 467, 45 (Iowa 2018). For the reasons set forth above, we conclude termination is in the children's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**