**IN THE COURT OF APPEALS OF IOWA**

No. 19-2024
Filed March 4, 2020

**IN THE INTEREST OF A.H. and J.H.,**
**Minor Children,**

**J.H., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Mills County, Scott Strait, District Associate Judge.

A father appeals the juvenile court order terminating his parental rights. **AFFIRMED.**

J. Joseph Narmi, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Katherine Murphy of Kate Murphy Law, PLC, Glenwood, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., Ahlers, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**DANILSON, Senior Judge.**

A father appeals the juvenile court order terminating his parental rights. We conclude the juvenile court did not abuse its discretion in denying the father's motion to reopen the record. There is clear and convincing evidence to support termination under Iowa Code section 232.116(1)(h) (2019). It would not be in the children's best interests to further delay this case. Additionally, none of the factors in section 232.116(3) should be applied to prevent termination. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

Ja.H., father, and K.G., mother, are the parents of Je.H., born in 2017, and A.H., born in 2018. The older child, Je.H., was removed from the parents' care on December 7, 2017, because they were using methamphetamine. There were also concerns about domestic violence in the parents' relationship. The child was placed in the care of the maternal great-grandparents. Je.H. was adjudicated to be a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2017).

The parents participated in Family Safety, Risk, and Permanency services. The father had a substance-abuse evaluation in January 2018 and a recommendation was made for extended outpatient services. In March, the father's drug patch was positive for methamphetamine. A search was conducted of the father's home on March 13, which resulted in charges on two counts of possession of a controlled substance and two counts of possession of drug paraphernalia. Officers also found a fraudulent urine system. The father started

a substance-abuse treatment program in May but left after a few days. He began a new treatment program in July, which he successfully completed.

When the second child, A.H., was born, he was immediately removed from the parents' care. There were concerns the father was intoxicated at the hospital when the child was born, as he was disruptive and caused a scene. The second child was also placed with the maternal great-grandparents, where the older child was living. A.H. was adjudicated to be in need of assistance under section 232.2(6)(b), (c)(2), and (n) (2018).

During a visit in January 2019, a social worker became concerned because the father seemed to be under the influence of alcohol. The father was often a "no show" for random drug tests. The father had a drug test in June that was positive for methamphetamine. In addition, in July he tested positive for alcohol, having a blood alcohol level of .228. Social workers recommended the father have a new substance-abuse evaluation, but he refused. The father began attending an Iowa Domestic Abuse Program in August.

On August 5, 2019, the State filed a petition seeking termination of the parents' rights. At the termination hearing, held on October 2, the father stated he had decided to stop using illegal drugs "about a month ago." The juvenile court terminated the father's parental rights under section 232.116(1)(e) and (h) (2019). The court found termination of the father's parental rights was in the children's best interests. The court noted the father continued to struggle with substance abuse. The father now appeals the juvenile court order terminating his parental rights.[1]

---

[1] The mother also appealed the termination of her parental rights, but her petition on appeal appeal was determined to be untimely and her appeal was dismissed.

## II.     Standard of Review

Our review of termination proceedings is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."  *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).  Our primary concern is the best interests of the child.  *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.     Motion to Reopen the Record

During the termination hearing, held on October 2, 2019, the father testified he was two classes short of finishing his domestic abuse education program.  He had attended twenty-two out of twenty-four classes.  The termination order was filed on November 22, and the court noted the father had not completed domestic violence education.

On December 4, the father filed a motion to reopen the record.  He sought to present evidence he completed the domestic abuse program on October 10.  The father asked the court to reconsider the termination of his parental rights in light of this evidence.  The juvenile court denied the motion to reopen the record.

The father claims the court abused its discretion by denying his motion to reopen the record.  "We review the denial of motions to reopen the record for an abuse of discretion.  In order to show an abuse of discretion, a party must show the juvenile court's action was unreasonable under the attendant circumstances."  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  "When a juvenile court diligently enters a termination order after a hearing, there is generally no basis to complain

about a discretionary refusal of the juvenile court to reopen the record, particularly when the evidence was available to the parties at the time of the hearing." *Id.*

In *L.T.*, the Iowa Supreme Court found the juvenile court abused its discretion by refusing to reopen the record when there was an inordinately long time between the termination hearing and the termination order, about twenty months. 924 N.W.2d at 525. In that circumstance, the court found "the mother's situation may well have materially changed." *Id.* at 526. Additionally, in *L.T.*, the mother sought to reopen the record before a final order was entered. 924 N.W.2d at 527.

In the present action, there was not a lengthy delay between the termination hearing and the filing of the termination order. The father testified he had nearly completed the domestic abuse education program. We find the information that he wanted to present by reopening the record was within the contemplation of the court from the evidence presented at the hearing. Also, the father waited until after the court entered the termination order before requesting to reopen the record, although he completed the program shortly after the termination hearing. We acknowledge the termination order would have been more accurate to recite that the father had nearly completed domestic abuse education classes. Nonetheless, for the reasons noted, we conclude the juvenile court did not abuse its discretion in denying the father's motion to reopen the record.

## IV.    Sufficiency of the Evidence

The father claims there is not sufficient evidence in the record to support termination of his parental rights under section 232.116(1)(e) or (h). "When the juvenile court terminates parental rights on more than one statutory ground, we

may affirm the juvenile court's order on any ground we find supported by the record." *A.B.*, 815 N.W.2d at 774. We will consider the termination of the father's rights under section 232.116(1)(h).

The juvenile court may terminate a parent's rights under section 232.116(1)(h) under the following circumstances:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The father disputes only the fourth element, claiming the children could be safely returned to his care. We consider whether the children could be returned to the parent's care at the time of the termination hearing. *See In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016). The father claims he has not used drugs since May 15, 2018. The father had a positive drug test in June 2019, after he completed a substance-abuse treatment program. He was a "no show" for several random drug tests. Additionally, there were concerns about the father's use of alcohol. At the termination hearing, the father stated he had decided to stop using illegal drugs "about a month ago." The father refused recommendations to have a new substance-abuse evaluation or to attend further treatment.

We agree with the juvenile court's conclusion that the father failed to appropriately address his substance-abuse issues. His statement that he decided to give up illegal drugs a month before the termination speaks to his failure to make

efforts to change and affirmatively assume the duties of a parent. The father also never progressed to an overnight visit or unsupervised visits over the lengthy period this case was pending. We conclude the children could not be safely returned to the father's care. There is clear and convincing evidence to support termination of the father's parental rights under section 232.116(1)(h).

## V.     Best Interests

The father claims termination of his parental rights is not in the children's best interests. He states he has a very strong bond with the children and is a very good father. He points out the maternal great-grandparents are elderly and claims this raises concerns about long-term stability in that placement. The father states he has contact with his four older children from a previous relationship. We acknowledge he has stable housing and employment but we have other concerns.

"When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *Id.* (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

At the termination hearing, the father testified his four older children were in a guardianship with his parents. These children do not live with the father, although he has contact with them. The maternal great-grandfather testified he was seventy-seven years old and was in "pretty fair" health. He stated he could adopt

the children. The maternal great-grandfather testified he did not believe the father had a bond with the children at issue. However, he also stated the father was "a pretty good dad."

We determine that termination of the father's parental rights is in the children's best interests. The juvenile court noted the father had not prioritized the children over his use of illegal substances throughout the case. Although the father had relapsed into drug use at least once after he completed a substance-abuse treatment program and had engaged in problematic alcohol use, he refused to engage in an evaluation or treatment for substance abuse. It would not be in the children's best interests to further delay this case. *See id.* The children need permanency and stability, which the father is not able to provide. Most importantly, the children need safety, and the evidence does not support that he can provide a safe and nurturing environment for the children.

## VI. Exceptions

Under section 232.116(3), "[t]he court need not terminate the relationship between the parent and child" under certain circumstances. Iowa Code § 232.116(3). A finding under subsection 3 allows the court not to terminate. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). "The factors weighing against termination in section 232.116(3) are permissive, not mandatory," and the court may use its discretion, "based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011)).

The father claims the juvenile court should have decided not to terminate his parental rights based on the factors in section 232.116(3). He notes the children are living with relatives, the maternal great-grandparents. He also claims to have a close bond with the children. The court may decide to not terminate a parent's rights if "[a] relative has legal custody of the child," Iowa Code § 232.116(3)(a), or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c).

As already noted, the maternal great-grandfather testified the father did not have a close bond with the children. Furthermore, although the children are living with the maternal great-grandparents, we find it would not be in the children's best interests to apply the factors in section 232.116(3) to save the parent-child relationship under the circumstances in this case. The evidence shows the father has not been able to overcome his problems with substance abuse in order to provide a safe and secure home for the children.

We affirm the juvenile court's decision to terminate the father's parental rights.

**AFFIRMED.**