# IN THE COURT OF APPEALS OF IOWA

No. 20-0726
Filed July 22, 2020

**IN THE INTEREST OF J.H., K.H., K.W., and M.W.,**
**Minor Children,**

**E.W., Mother,**
        Appellant.
_____


        Appeal from the Iowa District Court for Floyd County, David F. Staudt,

Judge.


        A mother appeals the termination of her parental rights to her children.

**AFFIRMED.**



        Mark Milder, Denver, for appellant mother.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant

Attorney General, for appellee State.

        Tammy L. Banning of Juvenile Public Defender's Office, Waterloo, attorney

and guardian ad litem for minor children.


        Considered by Doyle, P.J., May, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to her children: J.H., born in 2011; M.W., born in 2015; K.H., born in 2017; and K.W., born in 2019.[1] She contends the State failed to prove the grounds for termination cited by the juvenile court and the juvenile court should have granted her additional time to work toward reunification. The mother also claims she was "denied due process . . . and/or effective assistance of counsel" on appeal due to the juvenile court's allowance of her trial counsel to withdraw after the termination hearing. We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of human services in June 2017, due to concerns of drug use (K2 and marijuana) by the mother. J.H. and M.W. were removed from the mother's care; they were eventually placed in foster care in August 2017.[2] K.H. was born in December 2017. K.H. remained in the mother's care, but the mother's visits with J.H. and M.W. were fully supervised due to concerns about her mental health, parenting, continued drug use, and the people she associated with. In April 2018, the mother refused to allow a hair-stat test on K.H., and the child was removed from her care. Additional concerns surfaced about violence in the mother's home, and a shooting took place in her home in October 2018. By November 2018, the mother had provided two positive drug tests since K.H.'s removal and her "visits were still fully supervised due to the

---

[1] The parental rights of the children's fathers and putative fathers were also terminated; they did not appeal.
[2] The children were initially placed in the care of their maternal grandmother.

noncompliance in addressing the concerns previously identified." K.W. was born in January 2019.

In addition to other services being offered to her, the mother began participating in family treatment court. She showed signs of progress but did not follow through consistently with safety plan requirements. For example, in April 2019, she was "chased by the police" while driving in the "middle of the night" with K.W. Despite "significant concerns" with the mother "not testing, not coming to family treatment court," and "associating with unhealthy people," the judge "chose to move forward" with a trial home placement. Custody of the children was returned to the mother in June 2019.

The placement was short-lived. The children were removed from the mother's care in July 2019, due to concerns about her K2 use, her failure to participate in drug tests, and her failure to properly supervise the children. A child abuse assessment was founded for denial of critical care for the mother leaving the children unsupervised. The mother maintained the children were not left home unattended and the providers "lie[d]" in their reports. The mother was arrested when she resisted the removal of the children. The oldest child reported abusive behavior by the mother toward the children during the time they had been returned to her care. The mother maintained the children were "lying," but the children's therapist believed their "escalating" behaviors during that time frame were "trauma related."

The State filed a petition for termination of parental rights in January 2020. The mother completed a substance-abuse evaluation that month. She admitted to using K2 one month prior to the evaluation and up to "four times a day." The

mother was recommended to complete extended outpatient treatment. She was scheduled to begin treatment shortly thereafter, but "she no-showed and she never followed through with treatment."

The mother did not participate consistently in therapy or fully complete a psychological evaluation. The department adjusted how it communicated with the mother and the resources it provided to account for concerns regarding her intellectual functioning. The mother was "resistive" when caseworkers "tried to give her help in understanding things." She displayed "paranoia" and threatened caseworkers and the foster parents. The department caseworker noted the mother missed visits with the children or ended visits early and stated it was a "huge concern" that the children turned to the provider for "comfort or nurturing" during visits rather than the mother.

The termination hearing took place in March 2020. The department caseworker, guardian ad litem, and court appointed special advocate recommended termination of the mother's parental rights. The record before the juvenile court indicated J.H. and M.W. had been removed from the mother's care since August 2017, K.H. had been removed since April 2018, and K.W. had been removed since July 2019—with the exception of a twenty-seven day trial home placement for J.H., M.W., and K.H. in June and July 2019. Between the children's second removal in July 2019 through March 2020, the mother participated in only one out of thirty-five drug tests. That test was negative. The department caseworker opined that she had observed "behavioral indicators" that the mother was continuing to use drugs. The caseworker reported the mother had

"consistently said that she doesn't feel [her drug use] impacts her ability to take care of her children."

The caseworker testified the mother had been dishonest about where she was living and she had been evicted "a number of different times" throughout the case. The mother testified she planned to move into a two-bedroom apartment soon. The mother stated she had started working "yesterday" doing part-time housekeeping at a hotel. She did not have transportation, but she planned to ride to work with a friend. The mother testified she stopped using K2 "three weeks ago." She stated she had missed "almost all" of her drug testing since the summer of 2019 "[b]ecause when they removed my kids from me the last time, I lost all hope." The mother asked for "another chance." She believed she was "stable" and had "some structure," which would help her be more consistent in meeting the case plan expectations.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code sections 232.116(1)(e), (f), and (h) (2020). The mother appeals.

## II.    Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.    *Due Process Violation & Ineffective Assistance of Appellate Counsel*

The mother claims she was "denied due process . . . and/or effective assistance of counsel" on appeal due to the juvenile court's allowing her trial counsel, Michael Lanigan, to withdraw after the termination hearing.[3]  According to the mother, considering the expedited nature of the juvenile appeal process, Lanigan "was in an infinitely better position to protect [her] rights" because he had represented her "for nearly three years at that stage and was intimately familiar with the case and the facts."  The mother claims her appellate counsel, Mark Milder, was "ineffective due to the limited knowledge and information available to adequately represent her interests on appeal."  The mother requests this court to "enter a bright line rule that trial counsel should handle the appeal absent exceptional circumstances, which must be alleged in specificity, supported by facts, and at a minimum done with consent and notice to the client."

This court rejected a similar claim in *In re T.S.*, 868 N.W.2d 425, 434 (Iowa Ct. App. 2015).  In that case, the mother's attorney moved to withdraw "because he did not feel competent to handle an appeal and did not have the resources of time and skill to do so."  *T.S.*, 868 N.W.2d at 433–34.  The juvenile court granted the attorney's request.  *Id.* at 434.  The mother alleged a due-process violation and ineffective assistance of appellate counsel.  She argued appellate counsel had to "rely on her own recollections of the termination hearings to address all the

---

[3] The mother contends her rights were violated under the Federal and Iowa Constitutions.  *See* U.S. Const. XIV, § 1 (providing no state shall "deprive any person of life, liberty, or property, without due process of law"); Iowa Const. art. I, § 9 ("[N]o person shall be deprived of life, liberty, or property, without due process of law.").

potential appealable issues," in part because the transcript of the termination hearing was not prepared before the filing deadline. *Id.* The court rejected the mother's claim, concluding appellate counsel could have conferred with trial counsel and further stating, "[T]he foregoing authorities show that there is no per se due process violation inherent in the unavailability of the hearing transcript for termination appeals." *Id.* (citing *In re L.M.*, 654 N.W.2d 502, 506 (Iowa 2002) ("Counsel is not expected to exhaustively review the evidence at trial, nor must counsel cite to the record to demonstrate error. . . . Even in the extraordinary situation where trial counsel does not prepare the petition on appeal, the new attorney would most likely be able to consult with trial counsel and the client, as well as be able to review the court file.")).

Here, Lanigan filed a motion for leave to withdraw after the termination hearing, stating "[t]he attorney client communication has broken down to the extent that the undersigned can no longer effectively represent the mother," and "[a]dditionally, the undersigned was notified by the mother that he was fired and that the mother had another attorney." The juvenile court ordered Lanigan to remain as counsel for the mother through May 18, 2020, "pending determination of her intent to appeal or not." Lanigan filed a notice of appeal on behalf of the mother on May 8. On May 12, the court entered an order allowing Lanigan to withdraw and appointing Milder to represent the mother. The court thereafter entered an order denying Milder's motion to reappoint Lanigan, stating:

> On May 12, 2020, Mr. Milder, new counsel for [the mother], made application to reappoint trial counsel. The Court has reviewed Mr. Milder's motion. Although Mr. Milder is put in a bit of a bind to represent the mother concerning her appeals without having represented her at trial, the Court finds that Mr. Milder should

> continue his representation. Mr. Lanigan filed a motion to withdraw due to the complete breakdown of attorney-client relationship. [The mother] told Mr. Lanigan that he was "fired." [The mother] did not file any objection to the Court allowing Mr. Lanigan to withdraw. It appears that [the mother] wanted Mr. Lanigan off her case and has accepted the appointment of new counsel. Mr. Milder did not include any request from [the mother] that Mr. Lanigan should be reassigned as her counsel.

*Cf.* Iowa R. App. P. 6.201(1)(a) ("The appellant's trial counsel shall prepare the petition on appeal. Trial counsel may be relieved of this obligation by the district court only upon a showing of extraordinary circumstances."). Unlike the situations in *T.S.* and *L.M.* cited above, the transcript of the termination hearing was filed on May 18, and it was available to Milder before the mother's petition on appeal was filed on May 22. And "[a]s there is no claim of deficiency in [Lanigan's] memory or understanding of the [child-in-need-of-assistance] and termination proceedings or his availability, [Milder] could have consulted with him. The submitted petition does not indicate whether counsel did that." *See T.S.*, 868 N.W.2d at 434. Under these facts and circumstances, we reject the mother's due process and ineffective-assistance-of-counsel claims.

## IV. *Termination of Parental Rights*

The mother challenges the sufficiency of the evidence supporting the bases for termination cited by the juvenile court. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) (as to J.H. and M.W.) and (h) (as to K.H. and K.W.), which require proof of several elements conceded by the mother and proof the children could not be returned to her custody. The mother contends the evidence did not establish the children could not be returned to her care at the present time.

The mother claims she has "objectively demonstrated that she is able to do what needs to be done to get her kids returned to her care" and she "has done it already in the life of the case." The mother acknowledges "a big problem at trial was [her] failure to do drug testing recently and her admission to use within three weeks of the hearing," but she states "[t]here was no evidence as to the possible negative effects use of K2 would have on parenting and no objective proof that the mother's actual use resulted in any harm to the children."

At the termination hearing, the mother testified "[i]f this case were to continue," she would "be willing to go into any home treatment . . . today." When asked what she would do to get her children returned to her care again, she stated: "My mental health evaluation, seek the psychiatrist, help take my meds, drug test, and parenting the right way that they should be." She acknowledged she had been "inconsistent" in doing those things in the past and that her children "shouldn't wait long" for her "to decide to follow through and do what's been asked of [her]."

The juvenile court stated:

[The older children have] been out of the custody of [the] mother for 32 of the last 33 months. [The mother] has been involved with the Department of Human Services since 2017. She has yet to be able to have the [children] returned to her care for more than one month. [The mother] has made little, if any, improvement. She currently is not capable of caring for her children without supervision. [The children] would not be safe if returned to [the] mother's custody. [The mother] continues to associate with individuals that are involved in criminal behavior and/or the consumption of controlled substances. [The mother's] behaviors toward the Department and providers has been abysmal. She has failed to provide a safe and appropriate home for her children. She continues to show the signs of use of controlled substances. She failed to attend random drug testing. She failed to attend mental health treatment. She failed to even marginally complete the case plan. She had over two-and-a-half years to participate in programming to improve herself. She failed to do so. [The children] cannot be returned to her care as [the mother]

cannot provide a safe home, adequate care, or a nurturing environment.

We concur in the court's finding that the children could not be returned to the mother's custody at the time of the termination hearing. Iowa Code sections 232.116(1)(f) and (h) were satisfied.

The mother also claims that "there were good grounds" to grant her additional time to work toward reunification and "[t]here was no indication the children were suffering from a lack of permanency through behaviors, physical harm, or emotional harm." The department caseworker opined the mother had not shown progress consistently in any aspect of the department's original concerns; specifically, the mother had failed to participate in "testing and substance abuse treatment, . . . remain clean and sober, [or] initiate herself in mental health treatment." As the court stated, "Ultimately these children need permanency. They have waited since 2017 for their mother to make the changes necessary for their return to her care. [She] has failed to do so." Under these facts and circumstances, we do not find the court erred in denying the mother's request for an extension.

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2). For the reasons set forth above, we conclude termination is in the children's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**