# IN THE COURT OF APPEALS OF IOWA

No. 20-0994
Filed November 4, 2020

**IN THE INTEREST OF D.G.,**
**Minor Child,**

**L.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

The mother appeals the termination of her parental rights to her child. **AFFIRMED**.

David R. Fiester, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., Ahlers, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

The mother, L.W., appeals the termination of her parental rights to her child, D.G., born in 2013.[1]  The juvenile court terminated her rights based on Iowa Code section 232.116(1)(f) and (g) (2020).  As to paragraph (f), the mother concedes the State met its burden on the first three elements but claims it failed to meet its burden regarding the remaining element, that D.G. could not be returned to her care at the time of the termination hearing.  Based upon our de novo review, we find the State established by clear and convincing evidence that L.W.'s parental rights should be terminated.

Our review is de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).  Appellate courts are "not bound by the juvenile court's findings of fact, but [they] do give them weight, especially in assessing the credibility of witnesses."  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (quoting *In re D.W.*, 791 N.W.2d 703, 106 (Iowa 2010)).  The appellate court "will uphold an order terminating parental rights if there is clear and convincing evidence" of a ground for termination under Iowa Code section 232.116(1).  *D.W.*, 791 N.W.2d at 706.  We focus on Iowa Code section 232.116(1)(f).

A parent's rights may be terminated under section 232.116(1)(f) if: (1) the child is four years of age or older; (2) the child has been adjudicated a child in need

---

[1] D.G.'s biological father, D.R., consented to and had his parental rights terminated.  He has not appealed.

of assistance; (3) the child has been removed from the physical custody of their parents for twelve of the last eighteen months, or the previous twelve consecutive months and any trial periods at home have been less than thirty days; and (4) "[t]here is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents." L.W. contests only the last of these elements, claiming D.G. could have been returned to her care at the present time. In this context "at the present time" means at the time of termination hearing. *A.M.*, 843 N.W.2d at 111.

L.W. married D.W. in 2018. The marriage has been marked throughout by substance abuse and domestic violence on the part of both parties. On April 1, 2018, D.W. assaulted L.W. and she suffered physical injury. D.W. was arrested, charged with domestic assault causing injury, and jailed. The police reported the incident to the Iowa Department of Human Services (DHS), and DHS confirmed a child-abuse assessment due to D.G. witnessing the domestic abuse.

On June 29, 2018, a second incident occurred in Lisbon, Iowa. Both parties were intoxicated and engaged in an altercation that required police to be called, with D.W. eventually pleading guilty to domestic abuse. On November 14, 2018, police were called due to an intoxicated D.W. physically and sexually assaulting L.W. with D.G. present. He was charged with domestic abuse, third offense, and was held in custody.

On January 30, 2019, a safety plan for D.G. was implemented, which included that, upon D.W.'s release from custody, he would not visit or reside in the family home; L.W. would not allow D.W. to have visits with D.G.; and L.W. would insure that D.G. had a safe, appropriate and sober caretaker at all times. In

February, L.W. dropped the no-contact order she had against D.W. She also requested DHS approval for her to take D.G. to visit D.W. in jail, which was denied.

On April 4, 2019, D.W. was released from jail. He provided his probation officer with the address where he would reside as the family home with L.W. and D.G. DHS filed a child-in-need-of-assistance (CINA) petition and sought removal of D.G. from the home. D.G was removed on April 5, 2019 and was placed with his maternal grandmother. At a hearing on April 11, 2019, all parties stipulated that D.G. was a CINA.

On May 10, 2019, the police investigated a report by D.W. that L.W. had stabbed him with a knife and she was arrested. Both were intoxicated. Although L.W. denied the allegation, she pled guilty to the assault in July. At the time of the termination hearing, L.W. and D.W. were still married. The no-contact ordered had been lifted. L.W. indicated she was planning to divorce D.W. but had not initiated proceedings.

Throughout the proceedings, L.W. denied knowing the identity of D.G.'s biological father, telling DHS that he was conceived as a result of a one-night stand with a man she met in a bar. On May 15, 2019, the court terminated the unknown father's parental rights. In July 2019, DHS learned that D.R., an individual L.W. had known, acknowledged being D.G.'s father and had been paying L.W. $600 a month since D.G. had been born.[2] L.W. had also maintained contact with D.R.'s mother (D.G.'s paternal grandmother) and had allowed her to take D.G. to church on Sunday mornings. D.R. complained to DHS about L.W.'s mental instability.

---

[2] D.R.'s paternity of D.G. was confirmed by a DNA test in March 2014.

In July 2019, a DHS worker met with L.W. and her mother. DHS had learned of L.W.'s criminal charges for stabbing D.W. and that D.W. was having contact with L.W. and D.G. despite the safety plan, which L.W. and her mother had agreed to. At the meeting, the DHS worker also determined that both L.W. and her mother had been drinking. DHS requested court approval to remove D.G. from the maternal grandmother's care and place him with a foster family, which the court granted.

During the proceedings, L.W. was to complete substance-abuse treatment and a mental-health assessment. She started four different substance-abuse treatments, both inpatient and outpatient, and failed to successfully complete any of them. Shortly before the termination hearing, L.W. attended a fifth outpatient treatment, which she completed, but the success of the treatment is in doubt.

In August, DHS moved for waiver of reasonable efforts pursuant to Iowa Code section 232.102(14). Following hearings, the court granted the application on December 2, 2019. On December 6, 2019, a petition to terminate L.W.'s parental rights was filed. The termination hearing was held on July 9, 2020. During the lead-up to the hearing, L.W.'s visits with D.G. were tapered to once a month and were supervised.

Following the termination hearing, the juvenile court summarized the evidence and the reasons D.G. could not be returned to his mother's care and why termination was appropriate. Our de novo review of the record supports each of these findings and we set out the pertinent portion here:

> During the course of the case [L.W.] attempted substance abuse treatment 5 times. She first got an evaluation on June 13, 2019. She was recommended to participate in outpatient treatment. She was

unsuccessfully discharged from treatment. [L.W.] then went to St. Luke's Chemical Dependency for an evaluation on July 24, 2019. At that time intensive outpatient treatment was recommended. Due to her lack of accountability and continuing to drink, the recommendation was changed to residential treatment. [L.W.] was again discharged on October 21, 2019 without successfully completing treatment. She admitted herself into the hospital on October 30, 2019 to detox and entered ASAC residential on November 1, 2019. [L.W.] was discharged unsuccessfully on November 12, 2019. She then entered residential treatment at Prelude on approximately November 20, 2019 and was again unsuccessfully discharge[d] on December 3, 2019. At trial [L.W.] testified that she later went back to ASAC and completed extended outpatient treatment. Mother's Exhibit C, a letter, dated April 6, 2020, from ASAC indicated [L.W.] entered treatment on February 11, 2020 and successfully completed treatment on April 6, 2020. During the course of the case, [L.W.] tested positive for alcohol and methamphetamine. She was discharged from her employment at St. Luke's due to reporting for work intoxicated. She was observed drinking alcohol in a bar while wearing a drug testing patch. She did not show any insight into her own substance abuse issues and their impact on [D.G.] and her ability to parent him. She finally managed to complete an outpatient treatment program beginning months after the state filed its petition for termination of parental rights. [L.W.]'s lack of honesty throughout the case makes it impossible to determine if she is actually sober even at the current time. In addition to the substance abuse issues, [L.W.]'s parenting skills have been a concern throughout the case. At the onset she reported that she and [D.G.] were still showering together. [L.W.] seems to treat [D.G.] like a friend or playmate, rather than a normal parent-child relationship. She bought them matching "best friend" necklaces and insisted that [D.G.] wear his at all times, even when he complained that it would not be safe to wear it to bed. Service providers have documented many troubling instances such as lingering kisses on the lips, [D.G.] sucking [L.W.]'s neck during visits, and thrusting his hips toward [L.W.]'s backside while holding his genitals. Clearly, [D.G.] could not be returned to the custody of his mother now or in the near future without being considered a Child in Need of Assistance.

Our review has also confirmed the juvenile court's finding that L.W. was not a credible witness and could not be trusted with D.G.'s care. We find D.G. could not be returned to his mother's care and L.W.'s parental rights were properly terminated. We also conclude termination is in the child's best interest and

termination should not be averted due to the closeness of the parent-child bond.
*See* Iowa Code § 232.116(2), (3)(c).

**AFFIRMED.**