# IN THE COURT OF APPEALS OF IOWA

No. 20-0455
Filed June 3, 2020

IN THE INTEREST OF S.H.,
Minor Child,

B.H., Mother,
        Appellant.

_____

Appeal from the Iowa District Court for Crawford County, Mary L. Timko, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Thomas E. Gustafson of Gustafson Law Firm, Denison, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Martha A. Sibbel of Law Office of Martha Sibbel, PLC, Carroll, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., Mullins, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

A mother appeals the termination of her parental rights to one of her children, born in 2017.[1]  She contends the State failed to prove the grounds for termination cited by the juvenile court and the juvenile court should have granted her additional time to work toward reunification.  We affirm.

## I.  *Background Facts and Proceedings*

This family came to the attention of the department of human services in June 2018, due to concerns of methamphetamine use by the mother and S.H.'s father in the presence of S.H. and the mother's three older children.  The children were removed from the home and adjudicated in need of assistance.

The department implemented rehabilitative services, including supervised visitation; family safety, risk, and permanency services; mental-health evaluations and treatment; substance-abuse evaluations and treatment; and drug screens.  The court entered a no-contact order between the mother and the father.  The mother was arrested a number of times for violating the no-contact order, and she asked for it to be dismissed.  The mother was also arrested for assaulting the father's girlfriend.  The mother's visitation plan became more restrictive due to "chaos and drama caused by the parents, including their treatment of the [children's] relative placements."  At the adjudicatory hearing in September 2018, the department caseworker opined the parents had not "thus far indicated a willingness toward making positive changes in their lives."

---

[1] The parental rights of child's father were terminated in April 2019.

The mother completed a substance-abuse evaluation, and she was recommended to participate in extended outpatient treatment. A few weeks later, she was brought to the emergency room with an alcohol-induced seizure. The mother reported she "did not know for sure" if she had used any substances besides alcohol because she "was too intoxicated." The mother emphasized the children were not present during this incident. In an October dispositional order, the court ordered the mother to "follow all recommendations" of her mental-health and substance-abuse evaluations.

By the time of the permanency hearing in January 2019, the department caseworker was "uncertain" where the mother was living. The mother was unemployed. The mother had reported incidents of violence by the father, but she continued to spend time with him and a group of other friends whom the caseworker believed "would negatively impact anyone's ability to remain clean and sober." The mother had been unsuccessfully discharged from substance-abuse treatment for "nonattendance." She failed to attend drug testing from November 2018 through January 2019, and thereafter admitted she had been "drinking heavily" and using methamphetamine. However, the mother was "fairly consistent" with attending her visits with the children. The caseworker noted the mother had "shown that she has the skills to appropriately parent her children," but that "little progress" had been made toward reunification.

The State filed a petition to terminate the mother's parental rights in February 2019. Around that time, the mother entered a domestic violence shelter. She progressed to unsupervised visits with the children, which took place at the shelter. The mother was attending a dual program to address her mental-health

and substance-abuse issues, and she completed a drug test in February that was negative for all substances. The court continued the termination hearing due to the mother's progress and cooperation with services.

The court again continued the termination hearing in July. Around that time, the mother moved into an apartment. The court noted concerns with the mother's continued contact with the father as well as her contact with another male, M.L., a known drug user who was "not a good influence." But in September, despite those concerns, the court ordered S.H.'s older siblings to be placed with the mother under the department's supervision. The court declined to place S.H. with the mother "given [S.H.'s] age and the need to provide appropriately for her safety." S.H. was described as a "high-risk child" with special medical needs due to being born prematurely and having Williams Syndrome, which resulted in her having open-heart surgery and needing a feeding tube. However, the mother's visits with S.H. were increased to Monday through Friday. The court prohibited any person from residing in the mother's home without the prior approval of the department and the guardian ad litem. The court warned that "[a]dditional concerning information may result in the children being again removed from their mother's care."

Unfortunately, this arrangement was short lived. In early November, the older children were removed from the mother's care following an incident with M.L. and the mother at home that required police intervention. The mother admitted she had relapsed on alcohol and methamphetamine. She acknowledged she had allowed M.L. to stay in the apartment contrary to the court's order. Also around

this time, the mother was evicted from the apartment due to "the high amount of traffic in and out" and people living there who were "not on the lease."

The mother entered a homeless shelter, but she was kicked out after approximately one month. For the next week, the mother stayed with friends and used drugs. On December 30, 2019, the mother entered a women and children's center. The department caseworker believed the mother "entered the facility because she was homeless and desperate for a warm place to stay, not because she is ready to address her addiction."

The termination hearing took place on January 16, 2020. The record before the juvenile court indicated S.H. had been removed from the mother's care since July 2018, and the original concerns regarding the mother's substance abuse and "unhealthy" relationships remained. The mother testified the father and M.L. caused her to "get[] involved with drugs and mak[e] them more of a priority than what I have my own life decisions and my kids," but "I can already tell, like, a difference in myself starting already." She requested additional time to work toward reunification. The department and guardian ad litem recommended termination of the mother's parental rights.

Following the termination hearing, the court entered its order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2019). The mother appeals.

## II.    *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the

defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III.     Discussion

The mother challenges the sufficiency of the evidence supporting the basis for termination cited by the juvenile court. The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h), which requires proof of several elements conceded by the mother, as well as proof the child could not be returned to her custody. The mother contends the evidence did not establish S.H. could not be returned to her care at the present time.

The mother acknowledges she "has made poor choices as to her relationships with men," but she claims she should not lose her parental rights to S.H. "as a result of being a victim of domestic violence." Sadly, the tone of the mother's contention on appeal is consistent with her mantra throughout this case. At the termination hearing, as she had repeatedly stated before, the mother testified the father and M.L. were the cause of her drug use, the violence in her home, and her "poor choices" in regard to her children. But she also testified her methamphetamine use "caused [her] to associate with people like" the father and M.L. And she claimed that caseworkers and authority figures were out to get her and "lying" in their reports. This revolving circle of blame resulted in the mother failing to take responsibility for the impact her actions had on her children. The juvenile court observed, "[The mother] tends to say what she thinks will get her out of a jam. It is unfortunate that she did not learn that telling the truth would have helped her so much more."

We commend the mother for her progress in the two weeks prior to the termination hearing, and we acknowledge her testimony that she "learned how to depict red flags in men that are in the circle of domestic violence." But the mother's recent gain of insight did not amount to a showing that she had the protective capabilities required for reunification with her children, particularly one as "medically fragile" as S.H. The juvenile court stated:

> [The mother]'s testimony at the termination of parental rights hearing was full of hedging, outright lying, and lacked any insight. She continued to blame everyone else for the predicament in which she found herself, especially [the department caseworker]. [The mother] failed to understand that it was because of [the department caseworker]'s and [the guardian ad litem]'s abundant amount of patience with [her] that her parental rights to [S.H.] were not already terminated.
>     [S.H.] had lived with [the mother] only eight out of 26 months of her life. Despite her continued engagement in domestic violence, lack of consistent housing, general unemployment, subjection of her children to negative influences, and continued concerns regarding [the mother]'s drug and alcohol use in combination with [her] inattentiveness to [S.H.]'s medical needs, [the department caseworker] went above and beyond to provide efforts to reunite [S.H.] and her siblings with [the mother]. Even though [the department caseworker] had to wade through the lies and manipulation of the truth, she still held out some hope for [the mother] until it was crystal clear that [the mother] was unable to be a safe mother for [S.H.] and that there are no reasonable possibilities that she will ever be able to have [S.H.] returned to her care.

We concur in the court's finding that the child could not be returned to the mother's custody at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

The mother also claims that "given all the circumstances she has faced in regard to domestic violence, that additional time should have been granted to her to continue receiving therapy and counseling . . . and effectively deal with those problems and establish that she can have and should have [S.H.] back in her care

and custody." The department caseworker opined the mother would be in no position to care for the child within any reasonable amount of time, because "[w]hen [the mother] is unable to take any responsibility for the things that have gone wrong, then she's unable to correct any mistakes she's made, so those things just continually happen." As the court stated, "Time is a critical element," and "[p]atience has run out. We are no closer to full return of [S.H.] to [the mother]'s care than we were 18 months ago." Under these facts and circumstances, we do not find the court erred in denying the mother's request for an extension.

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). For the reasons set forth above, we conclude termination is in the child's best interests, and no permissive statutory exception should be applied to preclude termination. We affirm the decision of the juvenile court to terminate the mother's parental rights.

**AFFIRMED.**