# IN THE COURT OF APPEALS OF IOWA

No. 21-0519
Filed August 4, 2021

**IN THE INTEREST OF S.B.,**
**Minor Child,**

**STATE OF IOWA,**
        Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

The State appeals the denial of its petition to terminate the parental rights of the mother. **AFFIRMED.**

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellant State.

James W. Thornton of Thornton & Coy, PLLC, Ankeny, for appellee mother.

Shannon M. Leighty, Nevada, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., May, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

The State appeals a juvenile court order denying its petition to terminate the mother's parental rights,[1] challenging the court's finding that termination was not in the child's best interests.  Upon our review, we affirm.

## I.    *Background Facts and Proceedings*

S.B. was born in May 2020.  The mother has a history of significant involvement with the department of human services, dating back to 2009.  Her parental rights to six of her older children[2] have been terminated primarily due to unresolved concerns regarding "physical abuse [of herself and the children] mostly by her paramours, the health of the children, and minimal parenting ability."  The mother is described as "gravitat[ing] toward[] men who are not safe for her and injure her children," "deny[ing] any abuse that occurred," and "put[ting] the well-being of [the father] over her children."  Over the years, several founded child abuse assessments were completed naming the mother as perpetrator.  The father has a similar background.

S.B. was removed from the parents' care days after her birth, due to the parents' "extensive history of child abuse and neglect" and their "unresponsive[ness] to services in the past to assist them in safely caring for children."  She was adjudicated in need of assistance and placed in a relative placement,[3] where she has remained.

---

[1] The parental rights of the father were terminated.  He does not appeal.
[2] The mother also has two other children of whom she does not have custody.
[3] S.B.'s care providers have adopted one of S.B.'s full siblings and several half-siblings.

The department provided services to the family, with the goal of reunification. In November 2020, the court observed the mother had requested additional services, including more visitation with S.B., and the mother reported that she had secured housing for herself, was "actively seeking employment," and wanted to end her marriage to the father. The court viewed these as positive steps "to focus on her needs and desire to reunify with [S.B]." Yet the court noted its concern that the mother continued to be "resistant to" or "slow to respond to services." The mother completed a parenting and mental-health assessment, which recommended in part that she "not be left unsupervised with [S.B.]" due to her history of "poor choices," intellectual difficulties, and lack of "responsibility" for her actions. Visitation did not progress beyond fully supervised, and the mother did not appear to "recognize visitation as a pathway to establishing a place of importance in [S.B.]'s life."

In February 2021, the State filed a petition to terminate parental rights. The termination hearing was held in March. At that time, the child was ten months old and "happy" in her placement in a pre-adoptive home. The department caseworker testified the primary safety concern was the mother's mental health, specifically, the mother's "dependen[cy] upon the individual she's with" and her inability to "mak[e] good self choices" or protect the children. But the caseworker acknowledged there "d[id] not appear" to be any concerns about physical violence "in this case." The caseworker further agreed the mother had followed through with medication management and mental-health counseling, had completed a parenting program, had a "clean" home, and the department had "not had any concerns of her using illegal drugs."

The mother requested an additional six months to work toward reunification. She stated this case "is a lot different." The mother believed her relationship with the father had "calmed down" and was "more healthy," and she stated she was in a new relationship that was not violent. She stated she "actually learned a lot" of parenting skills from the parenting program, which she tried to implement during visits; she attended the child's medical appointments; and she had stable housing. Although "torn," the guardian ad litem ultimately recommended granting the mother's request for six additional months.

Following the termination hearing, the court entered its order terminating the father's parental rights but declining to terminate the mother's parental rights. The State appealed the court's denial of its petition to terminate the parental rights of the mother.

## II.     Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Discussion

The juvenile court concluded S.B. could not be safely returned to the mother and the grounds for termination were established pursuant to Iowa Code section 232.116(1)(h) (2021). However, the court determined termination would not be in the child's best interests. *See* Iowa Code § 232.116(2) (requiring the court to "give primary consideration to the child's safety, to the best placement for furthering the

long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child" when determining whether to terminate the rights of a parent).

> In seeking out those best interests, we look to the child's long-range as well as immediate interests. This requires considering what the future holds for the child if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.

*In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

Here, as the juvenile court noted, looking to the mother's past performance, she "has had her parental rights terminated to six children, mostly due to taking up with boyfriends who abuse her children, her inability to maintain her children's health, and her poor parenting skills." And all of the parents' children had "been removed due to their failure to respond to prior [child-in-need-of-assistance] services." However, the court opined that, contrary to the numerous prior occasions the mother had "been before the court," this was "the first time" the court noticed a "change" in her demeanor, including that she was "fully engaged." The court noted the mother "sought assistance in understanding service recommendations," including recommendations from the parenting evaluation that "had not been considered previously" but that the mother took "quite seriously." The department caseworker agreed the mother had been meeting the department's expectations and she was engaging in new recommendations from the parenting evaluation. The juvenile court found:

> The court finds it is not in [S.B.]'s best interests to terminate her mother's parental rights. [The mother] has ended her toxic relationship to [the father] and is living apart from him for the first time in a long time. She has not allowed [S.B.] to be exposed to [the

father] since leaving the relationship in late September. She is gaining insight into the danger domestic abuse played in her life and her child's life by acknowledging the control dynamic driving domestic abuse. [The mother] has maintained her [dialectical behavioral therapy] and medication management. She has located housing and maintained. Visitation now occurs in her home. She has sought greater understanding of the recommendations found in her parenting evaluation and has sought out those services. [The mother] still needs help developing her parenting skills but she did complete the Safe Care program.

Important to this court is that her demeanor and attitude has changed markedly, especially since the fall of 2020. She is more poised and confident. Her parenting evaluation did not note significant intellectual impairment and her syntax, word choice and insight shown in her testimony revealed significant development on her part in gaining understanding of her need for stability and security if she is to provide the same for [S.B.]. She has also come to acknowledge her traumatic childhood and address it, perhaps meaningfully for the first time. These are the emerging characteristics of a reasonable parent. [The mother] has committed to seeing the process through and she has shown consistent commitment to the goals since at least September 2020. She and [S.B.] both have a fundamental interest in furthering a healthy parent/child relationship. Such is emerging and likely to flower in the coming months. The court therefore finds it would be contrary to [S.B.]'s best interests to terminate her mother's parental rights.

We concur in the court's finding that termination of the mother's parental rights was not in the child's best interests, and we further find that, under these circumstances, a six-month extension for the mother was warranted. We affirm the decision of the juvenile court.

**AFFIRMED.**