**IN THE COURT OF APPEALS OF IOWA**

No. 21-0328
Filed September 22, 2021

**IN THE INTEREST OF A.P. and B.P.,**
**Minor Children,**

**B.R., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Scott County, Korie Talkington, District Associate Judge.


A mother appeals from the dispositional order entered by the court regarding her two children. **AFFIRMED.**


Jean Capdevila, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Joshua T. Cobie of Brubaker, Flynn & Darland, P.C., Davenport, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Greer, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**DANILSON, Senior Judge.**

A mother appeals from the dispositional order entered by the court regarding her two children, A.P., born in 2011, and B.P., born in 2012. She challenges the removal of the children from her care and the finding that the State made reasonable efforts for reunification. Upon our review, we affirm.

## I. *Background Facts and Proceedings*

This family came to the attention of the department of human services in July 2020, when the father's younger child, M.M.,[1] received "life threatening injuries" while in the care of the father and his girlfriend. At that time, A.P. and B.P. were in the father's sole custody,[2] and the mother had visitation rights. The court entered a temporary order removing A.P. and B.P. from the father's care and placing the children with a paternal uncle and aunt, J.P. and J.P. The court subsequently entered a removal order placing the children with the mother under department supervision.

In December 2020, the court entered an order adjudicating the children in need of assistance pursuant to Iowa Code section 232.2(6)(b), (c)(1), and (c)(2) (2020). The court noted, "All parties stipulate to the adjudication, except for the father." The court further noted, "The children are currently placed in the custody of their mother, but it was mentioned during the December hearing that there is an ongoing assessment regarding allegations that occurred in her home, so [B.P.] is currently safety planned to his paternal uncle, [J.P.]"

---

[1] M.M. is not a subject of these proceedings.
[2] Although the father is the biological father of B.P. but not A.P., he had sole legal custody of both children at the time of initial department involvement.

The court then held a dispositional hearing. The February 2021 dispositional order removed the children from the mother's care due to "safety concerns" and returned them to the care of the paternal uncle and aunt with whom they had initially been placed. The court noted, "All parties join the [department's] recommendation [that the children be placed with the paternal uncle and aunt], except the mother who objects." The mother appealed following the dispositional order.

## II.    *Standard of Review*

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "[W]e are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests." *Id.* (citation and footnote omitted).

## III.    *Discussion*

### A.    *Removal*

The mother challenges the court's finding that removal of the children "was appropriate" and "that the children could not be safely maintained in [her] custody." She also maintains "there was no credible evidence showing 'risk of harm' could not be managed if some services were initiated in the home."[3] Following a dispositional hearing, "the court shall make the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4). The Iowa Code gives preference to children's placement with a parent, guardian, or custodian. *See id.* § 232.102(4)(a). If a court transfers

---

[3] We find this assertion to be a combination of the two main issues raised by the mother, and we consider it in addressing her reasonable-efforts claim below.

custody, it "must make a determination that continuation of the child[ren] in the child[ren]'s home would be contrary to the welfare of the child[ren], and shall identify the reasonable efforts that have been made." *Id.* § 232.102(4)(b). "[P]reserving the safety of the child[ren] is the paramount consideration." *Id.*

In this case, the court was presented with substantial evidence indicating there was serious risk to the health and well-being of the children in the mother's care. The department reported that "[t]here have been a total of eight completed assessments since June 2020" with regard to the mother, and "[o]f the completed assessments four of them have been either confirmed or founded." On this issue, the court found:

> There are concerns in the home of the mother which began almost immediately after the children were placed. Concerns include the mother smoking marijuana in the presence of the children, lack of supervision, sexual behavior and age appropriate discipline. [B.P.] was exhibiting aggressive behavior towards his mother and sister. Services were offered to address the concerns . . . . Even with services, the concerns continued. A new assessment was begun on February 17, 2021, regarding the mother smoking marijuana in the presence of the children. [A.P.] is also exhibiting sexualized behavior. There are unknown men in the mother's home, the children state that they have heard the mother having sex and that they have observed pornography. On one occasion, [B.P.] set [A.P.]'s pillow on fire. The children have not been getting to school on time, even though the majority of the school year was remote learning. The children returned to in person instruction on February 16, 2021, and were late.
> It is appropriate at this time to place the children in the custody of paternal aunt and uncle, [J.P. and J.P.]. The Department has tried to work with the mother for over 6 months, but despite services, there are safety concerns. The children are comfortable in the home of [J.P. and J.P.]. The children have spent large amounts of time with them throughout their lives. At this point, the children cannot be safely maintained in the care of their mother.

We concur in the court's assessment. Although case reports indicated the mother can exhibit good parenting skills at times, the children reported that the

mother "is sleeping most often throughout the day" and leaves them unattended. And while we acknowledge the mother's insight to reach out for help with the children, we observe that the paternal uncle, as well as the paternal grandmother, "ha[ve] been an ongoing safety net for the mother . . . to assist during periods where she was unable to control or meet the children's needs." The mother's situational problem solving is not enough to overcome the evidence of the risk of harm to the children presented at the time of disposition. On our de novo review of the record, we find removal of the children from her care was appropriate.

### B.    Reasonable Efforts

The mother also contends that the State failed to make reasonable efforts to reunite her with the children. Reasonable services must be offered to preserve the family unit and to eliminate the need for removal. *See In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019); *see also* Iowa Code § 232.102(10)(a). According to the mother, "DHS waited until they decided to remove the children and then started increasing the services to [her], instead of providing the services first, and recommending removal when services failed."[4]

To the contrary, the department initiated services for the mother immediately following the children's removal from the father's care in July 2020. When the children were placed in the mother's care shortly thereafter, caseworkers worked to establish a parenting plan to assist the mother in disciplining B.P. upon noting the mother "openly admits at times she struggles with [B.P.]'s behaviors." When the mother stated she was "open" "to BHIS services to assist with [B.P.],"

---

[4] It does not appear that this issue was raised until the dispositional hearing, when the mother's attorney requested "that the [c]ourt have DHS intensify services."

those services were also established.  The department also provided solution-based casework services, anger management services, play therapy, safety planning services, individual therapy for the children and the mother, joint therapy for B.P. and the mother, relative placement, and placement at the mother's home. The placement is subject to modification and additional services may exist to assist the mother.  We conclude however, the department has made reasonable efforts to reunite the children with her mother at this juncture in the proceedings.

On our de novo review, we affirm the juvenile court on all issues.

**AFFIRMED.**