**IN THE COURT OF APPEALS OF IOWA**

No. 24-0884
Filed August 7, 2024

**IN THE INTEREST OF C.L., K.L., and K.L.,**
**Minor Children,**

**M.M., Mother,**
     Appellant.
_____

     Appeal from the Iowa District Court for Jones County, Joan M. Black, Judge.


     The mother appeals the termination of her parental rights to three children.
**AFFIRMED.**


     Michelle M. Jay of Bray & Klockau, Iowa City, for appellant mother.

     Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney General, for appellee State.

     Robert Davison, Cedar Rapids, attorney and guardian ad litem for minor children.


     Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the mother's parental rights to C.L., K.L., and K.L., who ranged in ages from thirteen to nine years old at the time of the termination trial, under Iowa Code section 232.116(1)(e) and (f) (2024).[1] The mother appeals, arguing the statutory grounds for termination were not proved, the State failed to make reasonable efforts to reunify her with the children, she should be given additional time to achieve reunification, and—because of the close bond she shares with the children—it is not in the children's best interests to terminate her rights.

Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). This means that while we respect the juvenile court's factual findings, especially on credibility issues, "we examine the whole record, find our own facts, and adjudicate rights anew on issues properly before us." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 629 (Iowa 1996). After that review, we affirm the termination of the mother's parental rights.

**Statutory Grounds.** Here, the juvenile court terminated the mother's parental rights on two statutory grounds: paragraphs (e) and (f) of section 232.116(1). While the mother challenges both, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and

---

[1] Although the State petitioned to terminate both the mother's and father's parental rights, due to issues with serving notice by publication, the termination proceedings were continued as to the father. The termination trial for the father was scheduled to take place after the juvenile court's termination order was entered in the mother's case.

convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to consider paragraph (f), which allows for termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant [(CINA]) to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

The mother challenges only the fourth element—whether the children could be returned to her custody at the time of the February 2024 termination trial (eighteen months after formal removal). *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (considering whether the child could be returned at the time of the termination trial). She notes that she maintained stable housing throughout her family's involvement with the Iowa Department of Health and Human Services (the department) and highlights some of the case plan requirements she did meet.

But the department's ongoing concern was whether the mother's mental-health needs prevented her from being able to provide a safe, stable environment for the children. As the department case manager explained at the termination trial, the department needed more information about the mother's possible use of illegal substances and a completed psychological evaluation to have a better understanding of what exactly the mother's needs were, and this was repeatedly expressed to the mother. Yet the mother failed to participate in any of the requested drug tests and, after completing a psychological evaluation late in the

proceedings, failed to sign a release that would allow the department to see the results of or the recommendations that stemmed from the evaluation. She engaged in mental-health therapy for a while, but she disengaged in the months leading up to the termination trial. The observed erratic behavior of the mother throughout the course of these proceedings also points towards a lack of resolution of these concerns. To that point, at one of only the three visits she attended between December 5, 2023, and the termination trial in mid-February 2024, the police had to be called and the visit ended early due to the mother's behaviors. Because of the persistent, unresolved questions regarding the mother's mental health, the children could not be safely returned to her custody.

As part of her argument the State failed to prove a statutory ground for termination, the mother contends the State failed to make reasonable efforts toward reunification. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) ("'[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination.' Still, where the elements of termination require reasonable efforts by [the department], the scope of [its] efforts after removal impacts the burden of proving those elements." (first alteration in original) (citation omitted)). We recognize the mother filed a "motion for finding of failure to provide reasonable efforts" on April 27, 2023, which the juvenile court considered and granted in May 2023 based on the following:

> There was a significant delay at the beginning of these cases in getting visitation started. Since then, there have been ongoing issues with providers and/or the Department social worker that has resulted in an unreasonable number of missed visits. The Court is also concerned about the poor communication that has pervasive in these cases. Meeting have been missed with no communication.

But then, in the CINA review order filed August 10, 2023, the court found reasonable efforts were made "during the last reporting period" and noted the department "made up some of the previously missed visits." Similarly, in the November 17, 2023 permanency order, the court also concluded the department made reasonable efforts—and granted the mother a three-month extension to achieve reunification. But, reasonable efforts made by the department must be supported by the mother's efforts in utilizing what is offered.

Here on appeal, the mother contends the department's failure to provide visits early in the case prevented her from reunifying with the children. First, we doubt this issue is properly preserved. While the mother raised the issue to the district court and obtained a favorable ruling, it occurred about nine months prior to the termination trial. After her successful motion, the department took steps to rectify the situation, which is shown by the juvenile court's later rulings that followed holding reasonable efforts were made. The mother has not pointed to another, later instance where she raised the issue of reasonable efforts to the juvenile court. *See In re C.H.,* 652 N.W.2d 144, 148 (Iowa 2022) (providing that "[i]f a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, *or at later review hearings*" to challenge reasonable efforts at the termination proceeding (emphasis added)). And the mother did not argue at the termination trial that she needed or deserved an additional extension of time to make up for the early deficiencies.

That said, assuming without deciding the issue is properly preserved, we conclude the mother's argument is without merit. While she maintains she should have been given more visitation with the children, we note she attended only fifty-

six of the offered 113 visits during the course of the proceedings. *See, e.g.*, *In re R.E.*, No. 23-0262, 2023 WL 3612354, at *3 (Iowa Ct. App. May 24, 2023) (rejecting the parent's reasonable-efforts challenge when the parent "did not take full advantage of the[] opportunities" provided to the parent); *In re E.W.*, No. 22-0647, 2022 WL 2347196, at *3 (Iowa Ct. App. June 29, 2022) (denying the parent's reasonable-efforts challenge on the merits when the family's inability to reunify "was a result of [the parent's] failure to fully engage in and respond to services, rather than a lack of reasonable efforts by the [department]"). While there were issues with visits early in the proceedings, those cannot be blamed for the family's inability to reunify, as it was the mother's unresolved mental-health issues that made reunification unsafe for the children. For all of these reasons, the State proved the ground for termination under paragraph (f).

**Best Interests and Permissive Exception.** Next, the mother argues that termination of her rights is not in the children's best interests because of the close bond she shares with them. This argument implicates both section 232.116(2) and 232.116(3)(c). Section 232.116(3)(c) allows the court to avoid termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," and it is the parent resisting termination who bears the burden to convince the court the permissive exception is warranted in this case. *See A.S.*, 906 N.W.2d at 475–76. While the children are certainly old enough to know the mother and they share a bond with her, the case manager questioned whether the bond they share is healthy. She testified:

When I visit with the children and I ask them, "If you could [wave] a magic wand and live anywhere that you would like, where would you live?"—in the 14 months I've had this case, they have never stated that they wanted to live with their mom. They have voiced frustration with the visitation and visits being cancelled, and I will go back to [the December 2023 visit when police were called], when [C.L.] put himself in between his mother and the Four Oaks staff. It is not a child's job to protect their parent; it is the parent's job to protect their child, and I think [C.L.] felt that he would, I guess, for lack of a better word, go down with the ship.

We are confident the mother and children love each other. But the mother has not established that the stability these children will gain through termination is outweighed by any detriment caused by the loss of her parental rights. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). We agree with the juvenile court: "[A]ny potential harm to the children from the loss of their mother will be ameliorated by placement in a safe, loving, permanent adoptive family." Termination is in the children's best interests, and no permissive exception is warranted.

**Additional Time.** Finally, the mother argues for additional time to achieve reunification. But normal error-preservation rules, which require a party to both raise an issue to and obtain a ruling from the lower court, apply in termination-of-parental-rights cases. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[A]ppellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."). And the mother neither raised this issue to the juvenile court at the termination trial nor received a ruling on the issue in the written termination order. So we do not consider it further.

We affirm the termination of the mother's parental rights to C.L., K.L., and K.L.

**AFFIRMED.**