# IN THE COURT OF APPEALS OF IOWA

No. 25-0990
Filed September 4, 2025

IN THE INTEREST OF G.R.W.,
Minor Child,

R.W., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Megil D. Patterson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

A father appeals the termination of his parental rights to his daughter, born in 2024.[1]  He claims the State failed to prove the grounds for termination cited by the district court, termination is not in the child's best interests, and he should have been granted additional time to work toward reunification.  Upon our review, we affirm.

I.      **Background Facts and Proceedings**

This family came to the attention of the Iowa Department of Health and Human Services (the department) in January 2024, when the child was born and her umbilical cord blood tested positive for amphetamine and methamphetamine.  A temporary removal order was entered, but the mother failed to comply with the order and absconded with the child.  A child-in-need-of-assistance (CINA) hearing was set for February, but it was continued because neither parent had been served.  The court observed the mother was still "on the run" and the father's "whereabouts were unknown (he was reportedly on warrant status after violating his parole)."  The court authorized service to the parents at their last known addresses, and the child was adjudicated CINA in April.

In June, the mother was arrested.  The child was located and placed in the department's custody for relative placement with a maternal relative.  The father was named as a putative father for the child and ordered to participate in paternity testing.  The father did not respond to the department's attempts to contact him.

---

[1] The mother's parental rights were also terminated.  She does not appeal.

In August, the child was moved to a concurrent placement with a different maternal relative.

The father first communicated with the department in November. He reported he had been "on the run" from police for several years due to multiple active warrants for violating his parole. He acknowledged a history of substance use. The father asked to see the child. However, due to the father's active warrants, he was not allowed visits with the child until the warrants were addressed.

The father was arrested shortly thereafter. While in jail, he participated in paternity testing and was confirmed to be the child's biological father. The father reported that the mother and child lived with his family after the child's birth during the period that they were on the run from the department. Despite his awareness of the court's involvement with the mother and child,[2] he declined to make contact with the department.

Meanwhile, the court determined termination was the best course for permanency. In December, the State filed a petition to terminate parental rights. The termination hearing was scheduled for January 2025. The hearing was continued to allow the father's counsel time to communicate with him after the department discovered the father was in prison.

---

[2] The father maintained he was wholly unaware of the court's involvement with the family. However, he acknowledged he learned the mother was "keeping custody of [the child] in defiance of a court order" when the mother "went to jail" in June.

The hearing took place in April. The father testified he turned himself in to police the prior September,[3] and he was placed in the Polk County Jail. He stated he was transferred to the Fort Dodge Correctional Facility in January 2025, where he currently resided. The father testified he had charges pending for credit card fraud in Polk County and possession of marijuana and a drug tax stamp violation in Franklin County, but his sister pled guilty to the Franklin County charges so that case was going to be "done with."

The father believed he could be released from prison in "no more than a couple weeks" on the Polk County case. He stated once he was released, he planned to participate in services while he waited for a men's residential facility "to have a bed open" in "a couple weeks." He testified "[s]obriety is of most importance" and he "got clean on [his] own" because he knew he would be tested when he went to jail. The father agreed "100 percent" that the child "would not be able to be returned to [his] custody today," but he requested an extension to work toward reunification. The father acknowledged, "I know this is going to take time," but he believed it was reasonably likely the child could return to his care within six months.

The department caseworker and the guardian ad litem recommended termination of parental rights. Following the hearing, the court terminated both parents' parental rights. The father appeals.

---

[3] The father testified he turned himself in to police in September, but the record indicates the father was not arrested until November. Regardless, it is undisputed the father had no contact with the department until November.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo.  *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).  Upon our review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home, *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.    Discussion

### A.     Grounds for Termination

The court terminated the father's parental rights under Iowa Code section 232.116(1)(b) and (h) (2024).  When the court "terminates parental rights on more than one statutory ground," we may affirm "on any ground we find supported by the record" evidence.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on section 232.116(1)(h).  The father does not dispute the first three elements of that section—the child is three years of age or younger, the child has been adjudicated in need of assistance, and the child has been removed from his custody for at least six months—and focuses on the fourth element, whether the child could be safely returned to his custody at the time of the termination hearing. Iowa Code § 232.116(1)(h)(1)–(4).

To support his claim, the father argues he "was due to discharge from prison in the near future" and he "had a plan on establishing appropriate housing so that he would be in a position to have the child in his care."  However, "at the present time" means at the time of the termination hearing.  *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting the phrase as used in Iowa Code section 232.116(1)(h)(4)).  The father was in prison at the time of the termination

hearing; he believed he would be released in "a couple weeks," but there was no guarantee he would be released at that time. *See In re A.E.*, No. 07-0397, 2007 WL 1345845, at *2 (Iowa Ct. App. May 9, 2007) (affirming termination under section 232.116(1)(h) where the parents were both in prison). We conclude clear and convincing evidence supports the termination of the father's parental rights under section 232.116(1)(h).

B.      Best Interests

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). To determine best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* The father claims "[i]t would have been in this child's best interest to allow her father an opportunity to be the father that he wanted to be." He also suggests that because the child is in the care of a relative, "a guardianship should have been considered."[4]

In assessing the best interests of the child, we look at her long-range as well as immediate interests. *See In re K.F.*, 437 N.W.2d 559, 560 (Iowa 1989). "This requires considering what the future holds for the child if returned to the [father]." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). When making this

---

[4] We address only the issues properly raised by the father. *See In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) ("We reaffirm that random mention of an issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration, and therefore confine our review to the issues properly presented by the mother." (cleaned up)). Because the father does not expand on his suggestion that "a guardianship should have been considered," we do not further consider that issue.

decision, we also look to the father's past performance because it may indicate the quality of care he is capable of providing in the future. *Id.* Generally, once the grounds for termination of parental rights have been met, termination is in the best interests of the child even if the child is in relative placement. *A.E.*, 2007 WL 1345845, at *3.

Here, the father testified he was present for the child's birth and he formed a bond with her during the first few months of her life while the parents were evading the department, enforcement, or both. And he further testified that his aunt and uncle provided the mother and child a place to live during that time.[5] However, aside from those early interactions with the child, the father had not made any attempt to assume the duties encompassed by the role of being a parent. As the guardian ad litem opined:

> [H]e's currently incarcerated. He may have a plan. He may be getting out soon. But that's no[t] where we are today. He was on the run for 891 days. That's a couple of years. If he would have turned himself in previously, we may be talking about just terminating on one parent and not Dad. That's not the situation we're in today. Clearly, [he] made a very good plea about what he would do and the care he has for [the child], but he's not in a position to resume care of her today. And with that I think given [the child]'s young age, where we are in the case, it's in her best interest to have permanency be termination of parental rights so we can move forward with the next steps for her, so she knows where she will be the rest of her life given she's made connection with [her relative placement] and want to continue that going forward, given just parents aren't in a position to have her back in their care.

The father had been on the run or incarcerated for all of the child's life, which prevented him from participating in services that could have been available to him. As noted by the district court, the father's "focus was avoiding detection by

---

[5] The father's aunt and uncle testified to the same.

authorities, not parenting." The child deserves stability and permanency, which the father cannot provide. *See id*. As the department caseworker opined, "these are formative years and being held in limbo in the lack of permanency while waiting for someone to get out of jail or out of prison and then engage in services . . . is not in the best interest of such a young child." Meanwhile, the child was "doing well" in the care of her relative, who was a concurrent placement. She should not have to wait any longer for the father to become a responsible parent. *See id*. Upon our review, we concur with the court's determination that termination is in the child's best interests.

C.      Six-Month Extension

The father also claims "a six month extension should have been granted." In order to grant a six-month extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the child will be able to return to the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). On this issue, the court found:

> The court considered entering a six month extension as requested by [the father]. . . . But the court cannot find there is a reasonable likelihood that [the child] could be reunified with him in the next six months. His release in the near future is not certain, and after that he would have to show a period of stability in the community before [the child] could be reunited with him. His track record does not support that will happen—he has either been in prison or on the run after violating his parole for the last several years. Under those circumstances, even if [the father] were released within the next six months, it is not reasonably likely that he could be reunified with [the child].

We concur with the court's determination that an extension of time was unwarranted. *See In re K.G.*, No. 18-1187, 2019 WL 719047, at *2 (Iowa Ct. App.

Feb. 20, 2019) (concluding the evidence did not support a finding the father was reasonably likely to be able to care for the child within six months).

We affirm the termination of the father's parental rights.

**AFFIRMED.**