**IN THE COURT OF APPEALS OF IOWA**

No. 25-1407
Filed December 3, 2025

**IN THE INTEREST OF T.J. and K.J.,
Minor Children,**

**D.J., Mother,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.


　　　A mother appeals the termination of her parental rights to two children.
**AFFIRMED.**


　　　Mark D. Reed, Urbandale, for appellant mother.

　　　Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney
General, for appellee State.

　　　Jami J. Hagemeier, Des Moines, attorney and guardian ad litem for minor
children.


　　　Considered without oral argument by Greer, P.J., and Schumacher and
Ahlers, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights to two children: T.J., born in 2017, and K.J., born in 2019.[1]  She challenges the sufficiency of the evidence supporting the grounds for termination, claims termination is not in the children's best interests, argues permissive exceptions to termination apply, and requests additional time to work toward reunification.  Upon our review, we affirm.

## I.      Background Facts and Proceedings

This family came to the attention of the Iowa Department of Health and Human Services most recently in May 2024,[2] upon concerns about the mother's mental health.[3]  The mother threatened to cause harm to herself, T.J., and department caseworkers, reporting that "if it weren't for [K.J.], she would have already committed suicide because of [T.J.]"  The mother admitted to alcohol and substance use.  The children tested positive for multiple substances, including methamphetamine, cocaine, and THC.  They were removed from the mother's custody and adjudicated children in need of assistance.  T.J. was placed with his father.  K.J., whose father was not identified, was placed in foster care with a family that is a concurrent plan.  Both children have remained in these placements since removal.

---

[1] T.J. was placed with his father, whose parental rights are not at issue.  The parental rights of any putative father of K.J. were terminated.

[2] In 2010, the mother consented to the termination of her parental rights to another child.  In 2016, the mother's parental rights to three other children were also terminated by consent.  The order in that case indicates "[t]hat services have either not been successful or the mother has not complied with services."  The family also engaged in department services in 2021 to address the mother's physical abuse of T.J.

[3] The mother has diagnoses of bipolar 1, post-traumatic stress disorder, oppositional defiant disorder, and adjustment disorder with disturbance of conduct.

In June 2025, due to the mother's lack of consistent participation in services, the State petitioned to terminate her parental rights. The termination hearing took place the following month. The mother testified that the children "probably" tested positive for substances because she allowed her friend to babysit them and the friend's "mother did meth." The mother maintained she used "[j]ust marijuana," but she acknowledged, "I do go off the handle sometimes." She agreed she had not completed a substance-use evaluation despite being requested to do so "since almost the beginning of this case." She testified that she was clean, explaining that she was not able to complete most of the department's requested drug screens due to her work schedule. When asked why her most recent test results were "diluted," the mother responded, "I didn't know it was against the law to drink water or Gatorade . . . ."

The mother testified that in spring 2025, she began participating in therapy "[e]very other week," which she found beneficial. She also began medication management around that same time, which helped manage her "moods." She explained that prior to being on medication she "wanted to kill everybody." The mother maintained that her goal was to "stay[] safe," but she could not "identify any triggers" that had not allowed her to stay safe in the past. She managed her mental health "day by day." When asked how she maintained sobriety, the mother stated, "I work too much" "[a]nd sleep." She refused to provide her boyfriend's full name or where she was living. The mother did not take accountability for how her actions affected the children and instead declared, "I'm over it."

The department and guardian ad litem recommended termination of parental rights. The court thereafter entered an order terminating the mother's

rights pursuant to Iowa Code section 232.116(1)(f) and (g) (2025). The mother appeals.

## II.	Discussion

We review termination-of-parental-rights proceedings de novo, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). The mother's appeal touches on each of these steps.

### A.	Grounds for Termination

The district court terminated the mother's parental rights on two statutory grounds, but we may affirm if one ground is supported by the record. *In re A.B.*, 957 N.W.2d 280, 313 (Iowa 2021). We focus on section 232.116(1)(g), under which the court may terminate parental rights if it finds:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family or a court of competent jurisdiction in another state has entered an order involuntarily terminating parental rights with respect to another child who is a member of the same family.
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The mother challenges the court's findings that she has not responded to services and additional time will not make a difference. *See* Iowa Code § 232.116(1)(g)(3)–(4).

The mother testified that she "remember[ed] nothing" about her prior termination proceeding in 2010. She did acknowledge her involvement with the department in 2016. As she explained, "I don't know. I guess, I like drinkin'. I didn't think there was a problem." She agreed she didn't complete a substance-use evaluation or comply with the department's expectations in that case. She explained that she consented to the termination of her parental rights because she "just wanted to be done and over."

In this case, at the time of the termination hearing, the mother had neither completed a substance-use evaluation nor "accurately reflect[ed her] use" of substances. The mother equivocated on how her children tested positive for multiple substances prior to their removal from her custody. She repeatedly no-showed for requested drug screens, and her most recent test was considered positive because it was diluted. The mother had not signed releases allowing the department to speak to her therapist or psychiatrist, so the department was not able to address safety concerns relating to her mental-health issues. Given the mother's lack of progress over the course of the case, the caseworker opined she didn't believe it was likely the mother "could address those concerns." Although the mother had begun to engage in therapy and medication management in the months preceding the termination hearing, she had not shown an ability to maintain progress long enough to move beyond fully supervised visitation. *See In re M.T.*, No. 24-1009, 2024 WL 4502261, at *3 (Iowa Ct. App. Oct. 16, 2024) (noting that without a "necessary progression" to unsupervised visits, the court cannot be convinced the mother is able to care for her children). When asked whether she

could safely parent T.J., whom she referred to as "crazy," the mother responded, "As long as his father helps me and don't just disappear for me."

In short, the mother has done little to address the concerns that initiated these proceedings. *See* Iowa Code § 232.116(1)(g)(3) (considering whether the parent is able or willing to respond to services offered). Considering her lack of progress or participation with services in her termination cases, we are not convinced she is able to adequately care for the children in the future. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (considering "the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future" (citation omitted)). Clear and convincing evidence exists for termination of her parental rights under section 232.116(1)(g).

B.     Best Interests

The mother maintains that termination is not in the best interests of the children. She claims "[h]er ability to parent remains intact and when she is not using illicit substances and [is] on medication she is a 'good mom.'" When determining best interests, we give primary weight to "the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional conditions and needs of the child[ren]." Iowa Code § 232.116(2); *accord In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019). These factors all weigh in favor of termination. Clear and convincing evidence shows that termination of the mother's parental rights is in the children's best interests.

C.      Permissive Exceptions to Termination

The mother claims that the exceptions in paragraphs (a) and (c) of section 232.116(3) apply to allow us to preserve the parent-child relationship because "a relative has legal custody of the child"[4] and "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  Iowa Code § 232.116(3)(a), (c).  These exceptions "are permissive, not mandatory."  *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted).  "We may use our discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship."  *Id.* (internal quotation marks and citation omitted).

Turning to the first exception, we observe "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child.  The child's best interests always remain the first consideration."  *Id.*  The court declined to exercise an exception under section 232.116(3), considering in part "the mother's threatening behavior towards [T.J.]'s father."  The mother has not met her burden to prove the custody-of-a-relative exception applies.

As to the closeness of the parent-child relationship, despite any bond the mother has with the children, the fact remains that they need a safe, stable, and secure home, which the mother is unable to provide.  Their needs are being met

---

[4] We note that only T.J. is in the custody of a relative.

in their current placements. The mother has not established termination of her rights will be detrimental to the children.

D.      Additional Time

The mother also contends the court should have granted her a six-month extension "for continued work and planning for return." *See* Iowa Code §§ 232.117(5), 232.104(2)(b) (permitting the court to grant an extension to work toward reunification if "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). The court found that a six-month extension would not change the outcome, and we concur. As the caseworker opined:

> So when we look at recommending termination, one of the things we ask ourselves is: Would it be reasonably likely, given a six-month extension, that the parent would be able to have the children back in their care safely?
> And in this specific case, it does not seem reasonably likely due to the fact that [the mother] . . . has been engaged in mental health services for approximately four to five months, and her therapist says there's been moderate improvements.
> And the things that she's working on are processing and coping living without her children, but also working on recognizing emotions and—I don't know the exact quote—but it was like regulation, I think, of emotions.
> So with just moderate improvement in that time span, I don't see how in six months she could reach the type of improvement we look for where she could safely parent the children.
> There's also been, oh, goodness, one, two, three, four, five, six, seven, eight, nine drug screen requests at this time, which have all been considered positive since they were not completed, as well as the recent drug screen that was completed that was diluted; which is considered positive.
> So there would be ongoing concerns of substance use and— that have not been addressed, and I don't see—foresee it being likely within six months that she could address those concerns.

Under this record, we find a six-month extension for reunification efforts is not appropriate.

**IV.      Conclusion**

Having found the statutory grounds satisfied, termination is in the children's best interests, a permissive exception should not be applied to preclude termination, and no extension is warranted, we affirm termination of the mother's parental rights to these children.

**AFFIRMED.**