# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1927
Filed June 24, 2026

———————————

**In the Interest of S.H. and J.I., Minor Children,**

**J.W, Mother,**
Appellant.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Rachael E. Seymour, Judge.

———————————

**AFFIRMED**

———————————

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona,
attorney for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney
General, attorneys for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and
guardian ad litem for minor children.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

J.W. appeals the order terminating her parental rights to two children: S.H., born in 2014, and J.I., born in 2017. She does not contest that the State proved the grounds for termination. Instead, she contends that termination is contrary to the children's best interests and asks for more time to work toward reunification. Because the record shows that termination serves the children's best interests, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

This is the second termination-of-parental-rights case involving the children. The juvenile court terminated the parental rights of their biological parents in 2017 due to abandonment and chronic substance use. The evidence at the time showed that J.W., the children's maternal grandmother, was best suited to furthering the children's long-term nurturing and growth based on their physical, mental, and emotional conditions and needs. J.W. assumed the children's care and adopted them.

Unfortunately, adoption by J.W. did not bring the children a happy ending. Between 2019 and 2024, the Iowa Department of Health and Human Services (HHS) investigated multiple allegations of child abuse because J.W. left the children in the care of one of the biological parents. During an August 2024 investigation into an allegation that J.W. left the children with the biological mother, who was using methamphetamine, HHS learned that J.W. had not lived with the children since November 2023 due to her own methamphetamine use.

The State petitioned to adjudicate the children in need of assistance (CINA), and the juvenile court removed them from J.W.'s custody.[1]  The children were tested for drugs, and each showed a positive result for THC.  The mother had a substance-use evaluation and was diagnosed with moderate cannabis use disorder (early remission) and severe methamphetamine use disorder.

Despite being offered substance-use and mental-health treatment, J.W. was unable to remain sober.  One year after the CINA proceedings began, the State petitioned to terminate J.W.'s parental rights under Iowa Code section 232.116(1)(e), (f), and (*l*) (2025).  After a hearing, the juvenile court granted the petition under section 232.116(1)(f) and (*l*).

## SCOPE AND STANDARD OF REVIEW

We review termination-of-parental-rights proceedings de novo.  *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).  While not binding on us, we give weight to the juvenile court's fact findings, "particularly with respect to credibility determinations." *Id.*

## DISCUSSION

Iowa courts use a three-step analysis to review the termination of parental rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  The mother only contests the second step: whether the best-interest framework laid out in section 232.116(2) supports termination of parental rights.  *Id.*  She also asks for more time to work toward reuniting with the children.

---

[1] HHS placed the children in foster care with two siblings.  At the time of the termination hearing, both were in a psychiatric medical institute for children.

## I.  Does terminating J.W.'s parental rights serve the children's best interests?

J.W. first contends that terminating her parental rights is contrary to the children's best interests.  We decide whether termination is in a child's best interest by "giv[ing] primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  We also "look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home."  *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) (cleaned up).

Clear and convincing evidence shows that J.W. cannot provide a safe and stable home for the children.  She left the children to live with someone whose parental rights were terminated years earlier because of safety concerns.  One year after the CINA proceedings began, J.W. had not made meaningful progress in addressing her substance-use issues, which are at the core of these concerns.  J.W.'s actions before and during the CINA proceedings have taken a clear toll on the children's mental health.

Like the juvenile court, we find S.H.'s personal statement at the termination hearing especially illuminating.  As recounted by the juvenile court, S.H.

> indicated it was his desire to stay with [the foster mother] because she had provided for his needs.[2]  He stated that when he resided with [J.W.], he did not go to the dentist and his "safety needs" were not met.  He went on

---

[2] J.I. also wishes to be adopted by the foster mother, who also cares for two of the children's siblings.  Unfortunately, the foster mother is unable to provide for J.I.'s needs while caring for the other children.  Although a concurrent plan home is needed for J.I., terminating J.W.'s parental rights serves his best interest.

to state he was hit, smacked, hit with a belt, and punched. He stated these typical types of punishments when he got in trouble. He stated that he endured verbal abuse, including being called "slurs," called "fat," "ugly," and "stupid" by [ J.W.] and other family members. Court notes it is well documented that [S.H.] never calls [ J.W.] "mom" or his "mother" and consistently refers to her by her first name only . . . . [S.H.] then retold events where he felt unsafe with [ J.W.]. One day, they were driving in a car, and she gave him a baggie of drugs and directed him to go give it to a specific individual. When he gave the person a bag of drugs and they gave him money which he gave to [ J.W.]. He told about a house [ J.W.] would take him to . . . . She would have him sit on the couch while [ J.W.] went to the back. [S.H.] stated the people that were coming and going from the house were "unsafe." [S.H.] tried to tell [ J.W.] that his biological mother was not safe, but she would not listen. [S.H.] stated he has worked a lot on his coping skills during the last year, which was evident by his ability to remain present and calm throughout this trial. Court notes that much of what [S.H.] stated during the hearing was same information he had previously expressed to the Court and other professionals. [S.H.] felt the need to state these experiences because of [ J.W.]'s continued denials of such abuse. Court continues to find his statements to be more credible than [ J.W.]'s denial of such abuse.

Both HHS and the guardian ad litem recommended terminating J.W.'s parental rights. We agree that termination serves the children's best interests.

## II.  Should J.W. be granted more time to remedy the circumstances that led to the CINA adjudication?

J.W. also contends that she should be granted more time to prove the children can be safely returned to her custody. *See* Iowa Code § 232.117(5) (permitting court to deny termination and enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (allowing the court to continue a child's placement for up to six months if the need for the child's removal from the home will no longer exist at the end of that period). To delay permanency under section 232.104, the court must "enumerate the specific

factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The record does not allow us to make the necessary findings to delay permanency for six months. Delaying permanency is also antithetical to the children's best interests. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (stating that the court considers whether further delay is in the child's best interests in addition to whether the need for removal will no longer exist at the end of the six-month period).

We affirm the termination of J.W.'s parental rights.

**AFFIRMED.**